### UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF TEXAS
### WACO DIVISION

| | |
|---|---|
| **NETLIST, INC.,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action Nos. 6:21-CV-430-ADA;** |
| **MICRON TECHNOLOGY, INC., MICRON SEMICONDUCTOR PRODUCTS, INC., MICRON TECHNOLOGY TEXAS LLC,** | **6:21-CV-431-ADA** |
| **Defendants.** | |

### MICRON'S OPPOSED MOTION TO TRANSFER VENUE UNDER 28 U.S.C. § 1404(a)

**TABLE OF CONTENTS**

Page

I.      INTRODUCTION ................................................................................................ 1

II.     STATEMENT OF FACTS ................................................................................... 2

        A.      Netlist, a Company Based in Irvine, California, Has No Waco Presence ............... 2

        B.      Netlist's Asserted Patents ....................................................................... 3

        C.      Micron Is Based in Boise, Idaho ............................................................. 3

        D.      Third-Party Witnesses Are Not in Texas ................................................ 6

III.    LEGAL STANDARD ......................................................................................... 6

IV.     THE COURT SHOULD TRANSFER THIS CASE TO THE District of Idaho ............... 7

        A.      Netlist Could Have Filed This Case in the District of Idaho ................... 7

        B.      The Private Factors Weigh in Favor of Transfer .................................... 7

                1.      The Relative Convenience for Witnesses Heavily Favors Transfer ........... 7

                2.      That Third-Party Witnesses Reside in Boise Heavily Favors
                        Transfer ......................................................................... 10

                3.      The Access to Sources of Proof Weighs Heavily in Favor of
                        Transfer ......................................................................... 10

                4.      No Practical Problems Favor Litigation in This District ......................... 12

        C.      The Public-Interest Factors Also Favor Transfer ................................. 12

                1.      The Relative Court Congestion Supports Transfer .................................. 12

                2.      Local Interest Strongly Favors Transfer .................................................. 13

                3.      The Courts'-Familiarity-with-Governing-Law Factor Is Neutral ............ 14

                4.      The Avoidance-of-Conflicts Factor Is Neutral ........................................ 14

V.      IN THE ALTERNATIVE, THE CASE SHOULD BE TRANSFERRED TO
        AUSTIN ............................................................................................................ 15

VI.     Conclusion ........................................................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Acer Am. Corp.*,
  626 F.3d 1252 (Fed. Cir. 2010)..........................................................................................7

*In re Adobe, Inc.*,
  823 F. App'x 929 (Fed. Cir. 2020) ...................................................................................13

*Affinity Labs of Texas, LLC v. BlackBerry Ltd.*,
  2014 WL 10748106 (W.D. Tex. June 11, 2014) ...............................................................12

*In re Apple Inc.*,
  581 F. App'x 886 (Fed. Cir. 2014) ...................................................................................10

*In re Apple Inc.*,
  No. 2021-187, 2021 WL 4485016 (Fed. Cir. Oct. 1, 2021)...............................................15

*In re Apple*,
  2020 WL 6554063 (Fed. Cir. Nov. 9, 2020)...........................................................8, 11, 13

*Datascape, Ltd. v. Dell Techs., Inc.*,
  2019 WL 4254069 (W.D. Tex. June 7, 2019) ...................................................................15

*In re DISH Network L.L.C.*,
  2021 WL 4911981 (Fed. Cir. Oct. 21, 2021)..................................................................1, 14

*Flexiworld Techs., Inc. v. Amazon.Com, Inc.*,
  No. 6:20-CV-00553, D.I. 101 (W.D. Tex. Aug. 2, 2021)..............................................1, 12

*In re Genentech, Inc.*,
  566 F.3d 1338 (Fed. Cir. 2009)..........................................................................8, 11

*In re Google LLC*,
  855 F. App'x 767 (Fed. Cir. 2021) ...................................................................................14

*Hammond, Inc. v. Google LLC*,
  2020 WL 3452987 (W.D. Tex. June 24, 2020) .................................................................14

*HD Silicon Sols. LLC v. Microchip Tech. Inc.*,
  No. W-20-CV-01092-ADA, D.I. 49 (W.D. Tex. Oct. 25, 2021).....................................10, 13

*In re Juniper Networks, Inc.*,
  14 F.4th 1313 (Fed. Cir. Sept. 24, 2021) ....................................................... *passim*

*Netlist, Inc. v. SK*
 *hynix Inc.* (W.D. Tex. Mar. 12, 2021)...............................................................................3, 12

*In re Nintendo*,
 589 F.3d 1194 (Fed. Cir. 2009).............................................................................................7

*Opperman v. Path, Inc.*,
 2013 WL 7753577 (W.D. Tex. Jan. 15, 2013) .....................................................................7

*Parus Holdings Inc. v. LG Elecs. Inc.*,
 No. 6:19-cv-432-ADA, 2020 WL 4905809 (W.D. Tex. Aug. 20, 2020) ..............................10

*In re Samsung Elecs. Co.*,
 2 F.4th 1371 (Fed. Cir. 2021) ...............................................................................................13

*True Chem. Sols., LLC v. Performance Chem. Co.*,
 2021 WL 860009 (W.D. Tex. Mar. 8, 2021) ........................................................................15

*In re TS Tech USA Corp.*,
 551 F.3d 1315 (Fed. Cir. 2008)............................................................................................11

*Uniloc USA, Inc. v. Apple Inc.*,
 2019 WL 2035583 (W.D. Tex. Apr. 8, 2019).........................................................................7

*In re Volkswagen AG*,
 371 F.3d 201 (5th Cir. 2004) ............................................................................................8, 9

*In re Volkswagen of Am., Inc.* (*Volkswagen II*),
 545 F.3d 304 (5th Cir. 2008) ................................................................................................6

**Statutes**

28 U.S.C. § 1404(a) .............................................................................................................6, 7, 15

## I.    INTRODUCTION

This case belongs in Idaho. It has no relation whatsoever to Waco. Netlist, a California-based plaintiff with no ties to Waco, has sued an Idaho-based defendant, and the overwhelming majority of relevant witnesses and documentary evidence are located in Idaho. None of the events leading to this action arose here. Nor does Netlist allege any relevant contacts in Waco.

Boise, Idaho, is the center of gravity of this case. Micron and the majority of its employees are based in Boise, where Micron designed and engineered the accused products. In addition to nearly all of Micron's witnesses and documents, likely third-party witnesses are also based in the Boise area. Further, Netlist's employees and the asserted patents' named inventors are based near Irvine, California, which is closer to the District of Idaho than this District.

The facts here are akin to the facts present in *Flexiworld Tech., Inc. v. Amazon.Com, Inc.*, No. 6:20-CV-00553, D.I. 101 (W.D. Tex. Aug. 2, 2021), and *In re DISH Network L.L.C.*, 2021 WL 4911981 (Fed. Cir. Oct. 21, 2021), where this Court and the Federal Circuit determined that transfer was proper because the case had little or no connection to this District. As in *Amazon*, "traveling to the [District of Idaho is] more convenient than to the WDTX" "[f]or the majority of relevant witnesses," and "[Micron] has documents stored on servers closer to the [District of Idaho] with none in the WDTX, along with no relevant third-party documents in this District." *Flexiworld*, D.I. 101, at 9, 14. As in *DISH*, "former employees knowledgeable about the design and development of the accused product[s]" are located in Idaho, "no party [has] identified a non-party witness in Texas," and the "Texas-based operations['] … connection to the accused [products] … is insubstantial compared to [Boise]'s significant connection to the design and development of the accused [products]." *DISH*, 2021 WL 4911981, at *3.

Because this case has no genuine connection to Waco and for the convenience of the parties

and potential witnesses, the Court should transfer the case to the District of Idaho.

## II.    STATEMENT OF FACTS

### A.    Netlist, a Company Based in Irvine, California, Has No Waco Presence

Netlist is a California-based company with no facilities or presence in Waco. None of its officers or directors resides in this Division or in this District. (Arbaugh Decl., Ex. A.)[1] Nor does Netlist allege any relevant Netlist contacts in Waco or in Texas. Indeed, Netlist is a Delaware corporation that maintains a principal place of business located in Irvine, California. (-430 Dkt. No. 1 ("-430 Compl."), ¶ 1.) Additionally, according to the records of the U.S. Patent Office, the inventors of U.S. Patent Nos. 10,489,314 ("the '314 Patent"), 9,824,035, 10,268,608 ("the '608 Patent"), and 8,301,833 (together, the "Patents-in-Suit") reside in California, not Texas. (*See* -430 Dkt. No. 1, Ex. 1; -431 Dkt. No. 1, Exs. 1-3.)

Ten of the eleven members of Netlist's leadership team also reside in California. (Arbaugh Decl., Exs. C, E-O.) The sole member of the leadership team not based in California, Todd Levy, resides in Austin. (*Id.*, Ex. K.) Mr. Levy only recently joined Netlist as its VP of sales in February 2021 (*id.*) and does not appear to be part of the design team that led to the Patents-in-Suit. Nor does he appear to be involved with patent licensing at Netlist—that individual appears to be Mr. Tobin Hobbs, Netlist's patent counsel, and/or Jamie Zheng, Netlist's executive advisor, intellectual property, both based in California. (Arbaugh Decl., Ex. C.)

Netlist lists two corporate headquarters on its website—one of them is its principal place of business in Irvine, California. The other purports to be its "U.S. Sales Office," but in actuality is Mr. Levy's personal residence, not an office. (Arbaugh Decl., Exs. B, P.) An internet archive of

---

[1]    All references to "Arbaugh Decl." are to the Declaration of Natalie Arbaugh in support of this Motion.

Netlist's website shows that this purported Austin sales office is only a very recent addition, as it was not present in a January 27, 2021 snapshot of the webpage that currently lists this office. (*Compare* Arbaugh Decl., Ex. B, *with id.*, Ex. V.) Further, Netlist's current website states that the sales-support office for Texas is in Irvine, not Austin. (Arbaugh Decl., Ex. D.) Micron is not aware of Netlist's having any facilities in Texas besides, purportedly, Mr. Levy's personal residence.

Prior to 2020, Netlist had not litigated any lawsuits in Texas. In Netlist's only other foray into Texas, the Court dismissed the case shortly after *Markman*. *See Netlist, Inc. v. SK hynix Inc.*, 6-20-cv-00194, -00525 (W.D. Tex. May 10, 2021) (granting joint motion to dismiss).

### B.    Netlist's Asserted Patents

The asserted claims of the four Patents-in-Suit generally relate to computer-memory systems. In particular, the sole patent asserted in the -430 case relates to using nonvolatile memory to back up volatile memory. (-430 Compl. ¶ 26.) Netlist asserts that the three patents of the -431 case are essential to memory-module standards adopted by the Joint Electron Device Engineering Counsel ("JEDEC") and accuses Micron products of infringement because they comply with JEDEC standards. (-431 Compl. ¶¶ 20-22, 43.) The Patents-in-Suit cite Micron's own publications. For instance, the '314 patent references memory devices available from "Micron Technology, Inc. of Boise, Id." ('314 Patent, 6:55.) Further, both the '314 and '608 patents cite several Micron technical papers and data sheets. ('314 Patent at 5, 7; '608 Patent at 6.)

### C.    Micron Is Based in Boise, Idaho

Based in Boise, Micron Technology, Inc. ("Micron") has no facilities, operations, or documents in Waco and has no employees in the Waco area. (Lendvay Decl., ¶4;[2] Holbrook Decl.,

---

[2]    All references to "Lendvay Decl." are to the Declaration of Bill Lendvay in support of this Motion.

¶6.)[3] Netlist accuses Micron's NVDIMM and DDR4 LRDIMM products ("Accused Products") of infringing the Patents-in-Suit. Micron's research and development teams for the Accused Products currently run from its Boise headquarters. (Lendvay Decl., ¶6; Holbrook Decl., ¶5.) Further, Micron initially designed and developed the Accused Products primarily in its Boise office, and no design or development was done in the Western District. (Lendvay Decl., ¶8; Holbrook Decl., ¶7.) Micron also stores the majority of its documentary evidence relevant to the Accused Products at its Boise headquarters. (Lendvay Decl., ¶7; Holbrook Decl., ¶6.) Additionally, the documentary evidence related to the above-referenced publications, data sheets, and products cited in the specifications of the Patents-in-Suit is also based in Boise. (*Id.*)

Nearly all of Micron's employees with specialized knowledge of the design, development, implementation, testing, and/or operation of the Accused Products are located in Boise, Idaho. For instance, Bill Lendvay, Frank Ross, Clayton Thompson, Steve Mann, Dirgha Khatri, Yogesh Sharma, Scott Emmart, Boe Holbrook, Scott Cyr, Randon Richards, and Matt Prather likely have relevant knowledge and are based in the Boise office. (Lendvay Decl., ¶10; Holbrook Decl., ¶9.) Lendvay and Ross have been involved with the development of the accused NVDIMM products and are members of the JEDEC task group responsible for creating standards for NVDIMM products. (Lendvay Decl., ¶10.) Prather has been a test engineer and has been involved with the business unit supporting customers for the accused NVDIMM products. (*Id.*) Emmart has managed Micron's System Compatibility Group to ensure that its NVDIMM and LRDIMM products function properly within its customers' systems. (*Id.*; Holbrook Decl., ¶9.) Holbrook took the lead in designing Micron's first LRDIMM product and has been intimately involved in the development

---

[3]   All references to "Holbrook Decl." are to the Declaration of Boe Holbrook in support of this Motion.

of the accused LRDIMM products. (Holbrook Decl., ¶8.) Thompson, Mann, Khatri, and Sharma have been engineers involved with the design and development of the accused products. (Lendvay Decl., ¶10.) Cyr and Richards have been members of the JEDEC task group responsible for creating standards for LRDIMM products. (Holbrook Decl., ¶9.) Micron has also identified Paul Voit, a design engineer based in Minneapolis, who may have knowledge relevant to the Accused NVDIMM Products. (Lendvay Decl., ¶11.) No Micron NVDIMM or LRDIMM engineers reside in Texas. (Lendvay Decl., ¶13; Holbrook Decl., ¶12.) Micron's sales and marketing teams for the Accused Products are also primarily based in Boise. (Lendvay Decl., ¶14; Holbrook Decl., ¶13.)

Although Micron has some employees and contractors in Austin, Texas, none of these employees helped research, develop, or design any of the Accused Products. (Lendvay Decl., ¶15; Holbrook Decl., ¶14.) The Austin office includes a small team of employees in sales primarily responsible for customer support and an engineering-design team. (Lendvay Decl., ¶15; Holbrook Decl., ¶14.) The small Austin engineering-design team focuses on other technologies, such as solid-state-drive (SSD) technology, that are distinct from the NVDIMM and LRDIMM technology at issue. (Lendvay Decl., ¶15; Holbrook Decl., ¶14.)

Micron also employs a small group at its Allen, Texas facility. None of the employees at this office ever worked on the LRDIMM products. Further, relying on Micron's investigation, only one employee at this office ever worked on the NVDIMM products and merely used standardized processes during the final stages of product development while operating under the direction and supervision of engineers based in Micron's Boise office. (Lendvay Decl., ¶17.) According to Micron's investigation, no employees from the Allen facility have unique knowledge relevant to any claims or defenses. (*Id.*, ¶17.)

Micron Technology Texas, LLC ("Micron Texas") and Micron Semiconductor Products,

Inc. ("MSP") are wholly owned subsidiaries of Micron. Both Micron Texas and MSP are Idaho entities, with principal places of business in Boise. (-430 Dkt. No. 20 ("Answer") ¶¶ 3-5.)

### D.   Third-Party Witnesses Are Not in Texas

Not only are Micron and Netlist relevant witnesses located outside Texas, but so are the third-party witnesses. Micron has identified four third-party witnesses who reside in Boise: Jo-Ann Lance, a former CAD designer for some of the Accused Products; Brett Williams, a former business-development manager for NVDIMM products; and Brett Dodds and Joe McManamen, former managers of Microns System Compatibility Group for the LRDIMM Products . (Lendvay Decl., ¶12; Holbrook Decl., ¶10.) Micron has also identified George Pax, Micron's lead scientist for LRDIMM products and primary JEDEC representative, who retired and now resides in Florida. (Holbrook Decl., ¶11.) Micron is not aware of any potential third-party witnesses in this District. (Lendvay Decl., ¶13; Holbrook Decl., ¶12.)

## III.   LEGAL STANDARD

In the Fifth Circuit, the preliminary inquiry as to whether a transfer is permitted under § 1404(a) is whether the action "might have been brought" in the destination venue. *In re Volkswagen of Am., Inc.* (*Volkswagen II*), 545 F.3d 304, 312 (5th Cir. 2008). If yes, the district court must then consider four private factors and four public-interest factors to determine whether the transfer is for the convenience of parties and witnesses and in the interest of justice. *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1316-17 (Fed. Cir. Sept. 24, 2021) (citing *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004)). The private factors include "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of non-party witnesses whose attendance may need to be compelled by court order; (3) the relative convenience of the two forums for potential witnesses; and (4) all other practical problems that

make the trial of a case easy, expeditious, and inexpensive." *Id.* The public factors include "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having disputes regarding activities occurring principally within a particular district decided in that forum; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law." *Id.*

Transfer is particularly appropriate when, as here, most witnesses and evidence are in or closer to the transferee venue. *Id.* (collecting cases) ("[T]he center of gravity of the action was clearly in the transferee districts, not the W.D. Texas."); *see also In re Acer Am. Corp.*, 626 F.3d 1252, 1254-56 (Fed. Cir. 2010); *In re Nintendo*, 589 F.3d 1194, 1198-99 (Fed. Cir. 2009); *Uniloc USA, Inc. v. Apple Inc.*, 2019 WL 2035583 (W.D. Tex. Apr. 8, 2019).

## IV.    THE COURT SHOULD TRANSFER THIS CASE TO THE DISTRICT OF IDAHO

Because this case has no genuine connection to Waco and for the convenience of the parties and witnesses, the Court should transfer the case to the District of Idaho.

### A.    Netlist Could Have Filed This Case in the District of Idaho

As an initial matter, the threshold requirement for a transfer of venue under § 1404(a) is met here. As Netlist's Complaint admits, Micron's principal place of business is in Boise. (-430 Compl., ¶ 3.) Accordingly, Netlist could have brought this action in the District of Idaho. *Opperman v. Path, Inc.*, 2013 WL 7753577, at *3 (W.D. Tex. Jan. 15, 2013).

### B.    The Private Factors Weigh in Favor of Transfer

#### 1.    The Relative Convenience for Witnesses Heavily Favors Transfer

Next, the relative convenience of Boise compared to Waco for potential witnesses heavily favors transfer. As the Federal Circuit has explained, "the single most important factor in transfer analysis" is "the relative convenience for and cost of attendance of witnesses between the two

forums." *Juniper*, 14 F.4th at 1318 (collecting cases). The farther distance from home "means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment." *Volkswagen*, 371 F.3d at 205.

Here, for likely witnesses, the cost of attendance in Waco would be significantly higher than that in the District of Idaho. Micron has identified 13 potential Micron and third-party witnesses based in the Boise area near Micron's headquarters, which is approximately eight miles from the federal courthouse in Idaho. (Lendvay Decl., ¶18.) By contrast, no witnesses reside in the Waco Division, or even in Texas, which is about 1,500 miles away. (Lendvay Decl., ¶13; Holbrook Decl., ¶12.) Accordingly, it would be more convenient and cost effective to hold trial in the District of Idaho, where most of the witnesses could testify within driving distance from home. A local trial would substantially decrease (if not eliminate) meal, lodging, and airfare expenses, as well as the time that these witnesses must be away from their regular employment to prepare for and attend trial. *See Volkswagen*, 371 F.3d at 205.

Micron has identified only two witness located outside the District of Idaho—George Pax, a lead scientist who retired in Florida (Holbrook Decl., ¶11), and Paul Voit, a design engineer based in Minneapolis (Lendvay Decl., ¶11)—but that fact does not impact the analysis, for two reasons. First, courts considering this factor ask not whether "*all* of the witnesses" reside in the transferee district but whether a "substantial number" are based there. *Genentech*, 566 F.3d at 1345 (emphasis in original); *see also In re Apple*, 2020 WL 6554063, at *6-7 (Fed. Cir. Nov. 9, 2020) (finding this factor weighed in favor of transfer when "most relevant party witnesses are located in NDCA"). Given that the engineering, marketing, and sales teams for the Accused Products have been based in Boise, it is clear that the majority of relevant Micron witnesses are in the District of Idaho.

8

Second, Waco is not more convenient than Boise for the witnesses based in Florida or Minnesota. Hotel costs, airfare, and travel time appear to be roughly equivalent between Boise and Waco. *Volkswagen*, 371 F.3d at 205 (increased expenses due to "additional travel time" favor transfer); (*compare* Arbaugh Decl., Ex. R, *with id.*, Ex. S).

Furthermore, relying on Micron's investigation, all relevant Netlist witnesses are located in and around Netlist's headquarters in Irvine, California, where the named inventors and ten of the eleven members of Netlist's leadership reside. (Arbaugh Decl., Exs. C, E-O.) Relocating this case to the District of Idaho actually would ease any burden on Netlist's relevant party witnesses, because Boise is more convenient than this District. Boise is less than 900 miles from Irvine, while Waco is over 1,400 miles away. Further, the flight times and airfare between these locations makes Boise drastically more convenient. There do not appear to be any direct flights from airports in or around Irvine (e.g., LAX) to Waco, travel times with layovers are longer, and airfares are significantly more expensive. (*Compare id.*, Ex. T, *with id.*, Ex. U.) Direct flights regularly run from Irvine to Boise, however, and the flights are also cheaper and quicker. *Id.*

Netlist does not appear to have any relevant witnesses located in Texas. As mentioned above, this year, Netlist hired as its VP of sales Mr. Levy—who does reside in Austin, Texas—and listed his personal residence as Netlist's U.S. Sales office. Relying on Micron's investigation, however, Micron does not believe that Mr. Levy will be a witness in this litigation. Mr. Levy does not appear to be part of the design team that led to the Patents-in-Suit, nor does he appear to be involved with patent licensing at Netlist—that individual appears to be Mr. Tobin Hobbs, Netlist's patent counsel, and/or Jamie Zheng, Netlist's executive advisor, intellectual property, both based in California. (Arbaugh Decl., Ex. C.) Further, according to its website, Netlist's sales-support office actually is located at its headquarters in Irvine, not Austin. (*Id.*, Ex. D.)

9

Even if Mr. Levy or some other individual from this District is identified as a relevant witness, the Federal Circuit has explained that if "[o]n the other side of the ledger, only one witness [i]s identified as being located in or near the W.D. Texas, and that witness, a [plaintiff's] employee, [i]s not alleged to have information relating to the merits of the infringement claims against [defendant]," "the factor strongly favors transfer." *Juniper*, 14 F.4th at 1319. Thus, this factor strongly favors transfer here.

### 2. That Third-Party Witnesses Reside in Boise Heavily Favors Transfer

Similarly, the availability of compulsory process to secure third-party witnesses favors transfer. *In re Apple Inc.*, 581 F. App'x 886, 889 (Fed. Cir. 2014). According to its investigation thus far, Micron has identified four third-party witnesses that reside in the Boise area: former employees Lance, Williams, Dodds, and McManamen. (Lendvay Decl., ¶12; Holbrook Decl., ¶10.) These witnesses are outside this Court's subpoena power. Conversely, third-party witnesses located in Boise *are* subject to the absolute subpoena power of courts in that state. By contrast, none of the potential third-party witnesses known to date resides in Texas. None of these witnesses have indicated that they are willing to testify; thus, they "[are] presumed to be unwilling and considered under the compulsory process factor." *HD Silicon Sols.*, W-20-CV-01092-ADA, D.I. 49, at 8; *see also Juniper*, 14 F.4th at 1321 ("[W]illing[ness] to testify [] does not cut in favor of conducting this litigation in the W.D. Texas."). Therefore, this factor weighs in favor of transfer.

### 3. The Access to Sources of Proof Weighs Heavily in Favor of Transfer

The next private factor, the relative ease of access to sources of proof, weighs heavily in favor of transfer. This factor requires courts to consider "where the parties store documentary evidence, such as documents and physical evidence." *Parus Holdings Inc. v. LG Elecs. Inc.*, No. 6:19-cv-432-ADA, 2020 WL 4905809, at *2 (W.D. Tex. Aug. 20, 2020). "In patent

10

infringement cases, the bulk of the relevant evidence usually comes from the accused infringer." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009). While much of modern discovery is conducted electronically, "the place where the defendant's documents are kept weighs in favor of transfer to that location." *Genentech*, 566 F.3d at 1345 (internal quotation marks omitted); *see also In re TS Tech USA Corp.*, 551 F.3d 1315, 1320-21 (Fed. Cir. 2008).

Here, the vast majority of the physical and documentary evidence related to the Accused Products is stored at Micron's headquarters in Boise. (Lendvay Decl., ¶7; Holbrook Decl., ¶6.) This is true of Micron's technical documents as well as marketing, sales, and financial information. (*Id.*) Nearly all the relevant Micron witnesses—both those with knowledge of the design and development of the Accused Products and those familiar with their sales and marketing—are also in Boise. None of them is located in Texas.

In addition, Netlist does not appear to store any technical documents relevant to the Patents-in-Suit at its site in Austin, because that address appears to be a personal residence—one that was not listed in connection on Netlist's website until after February 2021. These documents are likely to be stored in Netlist's headquarters in Irvine. Even if Micron could identify some potentially relevant documents it keeps in Texas, that would not outweigh the fact that Micron's documents are overwhelmingly in the District of Idaho. *See In re Apple*, 2020 WL 6554063, at *5 (explaining that "the movant need not show that all relevant documents are located in the transferee venue to support a conclusion that the location of relevant documents favors transfer. Nor is this factor neutral merely because some sources of proof can be identified in the district."). Additionally, because JEDEC's only office is located in Arlington, Virginia, Micron expects that its documentary evidence will also be located in Arlington, not this District.

Because the District of Idaho provides clearly superior access to the sources of proof that

11

will determine the outcome of this case, this factor supports transfer.

### 4.     No Practical Problems Favor Litigation in This District

The final private-interest factor, practical problems, is neutral. This factor considers "all other practical problems that make trial of a case easy, expeditious, and inexpensive," including judicial economy. *Affinity Labs of Texas, LLC v. Blackberry Ltd.*, 2014 WL 10748106, at *6 (W.D. Tex. June 11, 2014). This case is in its infancy. Micron has just served its answer, discovery has not yet begun, and the Court has yet to enter a scheduling order. Thus, transferring this case would have no impact on judicial economy. The Patents-in-Suit have not been litigated in either district. Although Netlist has litigated in this District, the patents at issue in that separate case stem from entirely different patent families unrelated to the Patents-in-Suit. *Netlist, Inc. v. SK hynix Inc.*, WDTX-6-20-cv-00194, -00525 (W.D. Tex. Mar. 12, 2021) (*Markman* order); *see also Flexiworld*, No. 6:20-CV-00553, D.I. 101, at 15 (explaining that "the presence of co-pending litigation involving one of the patents-in-suit without further argument as to how the co-pending litigation would make trial of this case easy, expeditious, or inexpensive" does not weigh against transfer). Because neither this District nor the District of Idaho has experience with the Patents-in-Suit prior to this case, transfer would not impact judicial economy. Thus, there are no practical problems impeding the transfer of this case to the District of Idaho, so this factor is, at minimum, neutral.

### C.     The Public-Interest Factors Also Favor Transfer

### 1.     The Relative Court Congestion Supports Transfer

As with the private-interest factors, the public-interest factors weigh in favor of transfer. The first public factor, administrative difficulties created by court congestion, supports transfer. This factor "concerns whether there is an appreciable difference in docket congestion between the two forums." *In re Adobe, Inc.*, 823 F. App'x 929, 932 (Fed. Cir. 2020). The number of patent cases

filed in this District far exceeds the number of patent cases filed in the District of Idaho. This District currently has 852 patent cases pending, with over 820 of those cases pending before this Court. (Arbaugh Decl., Ex. W.) By contrast, the District of Idaho has just 10 open patent cases. (*Id.*, Ex. X.) Thus, because of the higher level of congestion in this District, this factor favors transfer. *Juniper*, 14 F.4th at 1322 ("it is improper to assess the court congestion factor based on the fact that the Western District of Texas has employed an aggressive scheduling order for setting a trial date").

### 2. Local Interest Strongly Favors Transfer

The second public factor requires courts to weigh the relative interests of the venues in adjudicating the dispute. *In re Apple*, 2020 WL 6554063, at *9. "The most relevant considerations are [] where the design, development, and sale of the accused products occurred." *HD Silicon Sols.*, No. W-20-CV-01092-ADA, D.I. 49, at 13. The events that gave rise to this suit—the underlying research, design, development, testing, and sales of the Accused Products—all occurred in the District of Idaho. *See In re Samsung Elecs. Co.*, 2 F.4th 1371, 1380 (Fed. Cir. 2021) (holding that this factor favored transfer because most, even if not all, of the underlying research, design, and development of the accused products centered on activity within the transferee venue). Further, Micron's headquarters are there, along with its leadership and the vast majority of its employees. Thus, the District of Idaho has a strong local interest in this case.

This District, on the other hand, has no meaningful ties to the case. Micron's office in Austin has no connection with the products accused of infringement, and its "mere presence in the W.D. Texas [] is not tethered to the events underlying the litigation." *See In re Google LLC*, 855 F. App'x 767, 768 (Fed. Cir. 2021) ("Google's mere presence in the W.D. Texas … is not entitled to weight in analyzing the local interest factor in this case."); *see also Juniper*, 14 F.4th at 1320

(entitling little weight to "Juniper's office in Austin[, which] existed to service a startup company"). Even when a defendant has "a large number of employees in both districts," the "local interest" favors transfer if the "development of the accused [products]" occurred in the transfer district. *See Hammond, Inc. v. Google LLC*, 2020 WL 3452987, at *5 (W.D. Tex. June 24, 2020).

Further, Netlist has no presence in Waco and only a minimal, irrelevant presence in Austin that appears to be of recent making. Apparently, Netlist added this purported Austin office to its webpage in the weeks leading up to the filing of its Complaint in April 2021. (*Compare* Arbaugh Decl., Ex. B (current webpage), *with id.*, Ex. V (January 2021 snapshot).) Further, according to Micron's investigation into this "office," Netlist appears to have only a single employee in this District, Mr. Levy, working from his personal residence. (Arbaugh Decl., Exs. B, P.) And nothing indicates that he will be a relevant witness in this case. *See DISH*, 2021 WL 4911981, at *3 (the "Texas-based operations['] … connection to the accused [products] … is insubstantial compared to [Boise]'s significant connection to the design and development of the accused [products]."). Further, since Mr. Levy's employment began just months ago, Netlist's "recent and ephemeral" presence should be given little weight. *See Juniper*, 14 F.4th at 1320 (collecting cases). Because Netlist's purported presence, if any, in this District is insubstantial when compared to Micron's home presence in the District of Idaho, this factor supports transfer.

### 3.       The Courts'-Familiarity-with-Governing-Law Factor Is Neutral

The familiarity of the forum with the law that will govern the case factor is neutral, because both districts are equally familiar with, and equally capable of applying, U.S. patent law.

### 4.       The Avoidance-of-Conflicts Factor Is Neutral

Lastly, the avoidance-of-conflicts factor is neutral because, to the extent any issues arise related to discovery in foreign jurisdictions, both courts are equally able to address those issues.

14

**V.     IN THE ALTERNATIVE, THE CASE SHOULD BE TRANSFERRED TO AUSTIN**

The Court should transfer this case to Idaho given the overwhelming connection to that District. But, if this Court decides to keep this case in this District, any ties are to Austin, not Waco, and therefore the Court should transfer this case to the Austin Division. The § 1404(a) factors apply to both inter-district and intra-district transfers, but "[i]t is well-settled that trial courts have even greater discretion in granting intra-district transfers than they do in the case of inter-district transfers." *True Chem. Sols., LLC v. Performance Chem. Co.*, 2021 WL 860009, at *1 (W.D. Tex. Mar. 8, 2021). The threshold requirement under § 1404(a) is met, because Micron has an office in Austin and Netlist could have brought this action in the Austin Division. Further, the private- and public-interest factors either favor transfer or are neutral. If the Court declines transfer to Idaho, any ties to this District are in Austin, not Waco. Austin also would be more convenient for both the Netlist witnesses based in California and the Micron witnesses based in Boise, because there are direct flights to Austin but flights to Waco require a layover. (Arbaugh Decl., Exs S, T). And because any ties of both parties are to Austin, not Waco, the outcome of this action affects local Austin interests "more acutely" than local Waco interests. *Datascape, Ltd. v. Dell Techs., Inc.*, 2019 WL 4254069, at *3 (W.D. Tex. June 7, 2019).  Further, "there are no sources of proof in the Waco Division." *In re Apple Inc.*, No. 2021-187, 2021 WL 4485016, at *2 (Fed. Cir. Oct. 1, 2021) (vacating re-transfer from Austin to Waco). Thus, the convenience of the parties, sources of proof, and local-interest factors favor transfer, while the remaining factors are neutral. Therefore, if the Court declines to transfer to the District of Idaho, it should transfer to the Austin Division.

**VI.     CONCLUSION**

For the foregoing reasons, Micron respectfully asks that the Court grant its Motion and transfer the case to the District of Idaho or, in the alternative, to the Austin Division.

Dated: November 24, 2021          Respectfully submitted,


By:   */s/ Natalie Arbaugh*
_____
      Thomas M. Melsheimer
      State Bar No. 13922550
      TMelsheimer@winston.com
      Natalie Arbaugh
      State Bar No. 24033378
      NArbaugh@winston.com
      WINSTON & STRAWN LLP
      2121 N. Pearl Street, Suite 900
      Dallas, TX 75201
      Telephone: (214) 453-6500
      Facsimile: (214) 453-6400

      Katherine Vidal
      *Pro Hac Vice*
      State Bar No. 194971
      KVidal@winston.com
      Michael R. Rueckheim
      State Bar No. 24081129
      MRueckheim@winston.com
      WINSTON & STRAWN LLP
      275 Middlefield Road, Suite 205
      Menlo Park, CA 94025
      Telephone: (650) 858-6500
      Facsimile: (650) 858-6559

      Matthew Hopkins
      *Pro Hac Vice*
      mhopkins@winston.com
      WINSTON & STRAWN LLP
      1901 L Street, NW
      Washington, DC 20036
      Telephone: (202) 282-5862
      Facsimile: (202) 282-5100

      Juan Yaquian
      *Pro Hac Vice*
      JYaquian@winston.com
      WINSTON & STRAWN LLP
      800 Capital Street, Suite 2400
      Houston, TX 77002

16

Telephone: (713) 651-2600
Facsimile: (713) 651-2700

**ATTORNEYS FOR DEFENDANTS
MICRON TECHNOLOGY, INC.,
MICRON SEMICONDUCTOR
PRODUCTS, INC., MICRON
TECHNOLOGY TEXAS, LLC**

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 24th day of November, 2021, a true and correct copy of MICRON'S OPPOSED MOTION TO TRANSFER VENUE UNDER 28 U.S.C. § 1404(a) was electronically filed with the Clerk of Court using the CM/ECF system, which sends notifications of such filing to all counsel of record who have consented to accept service by electronic means.

*/s/ Natalie Arbaugh*
Natalie Arbaugh

## **CERTIFICATE OF CONFERENCE**

Pursuant to Local Rule CV-7(g), Micron certifies that Micron informed Plaintiff of Micron's intent to move to transfer the case to the District of Idaho or in the alternative to the Austin Division and asked whether Plaintiff opposed the motion. Plaintiff did not respond to Micron's inquiry, and therefore, Micron considers this motion opposed.

*/s/ Natalie Arbaugh*
Natalie Arbaugh