# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| NETLIST, INC., <br><br> Plaintiff, <br><br> v. <br><br> MICRON TECHNOLOGY, INC., MICRON SEMICONDUCTOR PRODUCTS, INC., and MICRON TECHNOLOGY TEXAS LLC, <br><br> Defendants. | Civil Action No. 1:22-cv-00134-LY <br><br> **JURY TRIAL DEMANDED** |
| NETLIST, INC., <br><br> Plaintiff, <br><br> v. <br><br> MICRON TECHNOLOGY, INC., MICRON SEMICONDUCTOR PRODUCTS, INC., and MICRON TECHNOLOGY TEXAS LLC, <br><br> Defendants. | Civil Action No. 1:22-cv-00136-LY <br><br> **JURY TRIAL DEMANDED** |

**PLAINTIFF NETLIST, INC.'S OPPOSITION TO DEFENDANTS' MOTION TO STAY PENDING *INTER PARTES* REVIEW OF THE ASSERTED PATENTS**

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................ 1

II. BACKGROUND .................................................................................................................. 1

III. LEGAL STANDARDS ........................................................................................................ 2

IV. ARGUMENT ........................................................................................................................ 3

    A. A Stay Would Not Simplify the Issues .................................................................. 3

    B. Netlist Would Be Prejudiced by a Stay ................................................................. 5

    C. The Current State of the Proceedings Weighs Against a Stay ............................... 9

V. CONCLUSION ................................................................................................................... 10

## TABLE OF AUTHORITIES

**Cases**

*Carucel Investments, L.P. v. Volkswagen Group of Am., Inc.*,
No. 3:18-cv-3333-M, Dkt. 26 (N.D. Tex. June 24, 2019) .......................................................... 5

*Comcast Cable Commn's Corp. v. Finisar Corp.*,
No. 06-cv-04206-WHA, 2007 WL 1052883 (N.D. Cal. Apr. 5, 2007) ..................................... 2

*Dali Wireless, Inc. v. CommScope Techs. LLC*,
No. CV 19-952 (MN), 2022 WL 621547 (D. Del. Mar. 3, 2022) .............................................. 9

*DiCon Fiberoptics, Inc. v. Preciseley Microtechnology Corp.*,
No. 15-cv-1362-BLF, 2015 WL 12859346 (N.D. Cal. Oct. 13, 2015) ...................................... 5

*Ellenby Techs., Inc. v. Fireking Security Group*,
533 F. Supp. 3d 656 (N.D. Ill. 2021) ..................................................................................... 6, 8

*Enventure Global Tech. Inc. v. Weatherford U.S., L.P.*,
No. 4:19-2397, 2020 WL 12573280 (S.D. Tex. Dec. 11, 2020) ................................................ 4

*Ethicon, Inc. v. Quigg*,
849 F.2d 1422 (Fed. Cir. 1988) ................................................................................................. 2

*Ever Win Int'l Corp. v. Radioshack Corp.*,
902 F. Supp. 2d 503 (D. Del. 2012) .......................................................................................... 5

*Evolutionary Intelligence LLC v. Yelp Inc.*,
No. 13-cv-3587, 2013 WL 6672451 (N.D. Cal. Dec. 18, 2013) ................................................ 6

*Kirsch R&D, LLC. v. Intertape Polymer Corp.*,
No. 8:20-cv-1982, 2021 WL 2905436 (M.D. Fla. April 7, 2021) ........................................ 8, 10

*Landis v. N. Am. Co.*,
299 U.S. 248 (1936) ................................................................................................................... 2

*MiMedx Group, Inc. v. Tissue Transplant Tech. Ltd.*,
No. SA-14-CA-719, 2015 WL 11573771 (W.D. Tex. Jan. 5, 2015) ............................... 2, 7, 10

*Netlist, Inc. v. Smart Storage Sys., Inc.*,
No. 13-cv-5889, 2014 WL 4145412 (N.D. Cal. Aug. 21, 2014) ............................................... 7

*NFC Tech. LLC v. HTC Am., Inc.*,
No. 2:13-cv-1058, 2015 WL 1069111 (E.D. Tex. Mar. 11, 2015) ............................................ 2

*Pers. Audio LLC v. Google, Inc.*,
230 F. Supp. 3d 623 (E.D. Tex. 2017) ...................................................................................... 7

*Realtime Data LLC v. Actian Corp.*,
   No. 6:15-CV-463, 2016 WL 3277259 (E.D. Tex. June 14, 2016) ................................ 2, 3, 6, 7

*SAGE Electrochromics, Inc. v. View, Inc.*,
   No. 12-cv-06441, 2015 WL 66415 (N.D. Cal. Jan. 5, 2015) ....................................................... 6

*Saint Lawrence Commc'ns LLC v. ZTE Corp.*,
   No. 2:15-CV-349-JRG, 2017 WL 3396399 (E.D. Tex. Jan. 17, 2017) ...................................... 5

*Samsung Elecs. Co. v. Blaze Mobile, Inc.*,
   No. 5:21-cv-02989, 2022 WL 103552 (N.D. Cal. Jan. 11, 2022) ............................................... 8

*Signal IP, Inc. v. Ford Motor Co.*,
   No. 14-cv-13729, 2015 WL 5719671 (E.D. Mich. Sept. 30, 2015) ............................................ 6

*Sisvel Intern., S.A. v. ZTE (USA), Inc.*,
   No. 3:20-cv-01289-M, Dkt. 43 (N.D. Tex. June 21, 2021) ......................................................... 3

*Trover Grp., Inc. v. Dedicated Micros USA*,
   No. 2:13-CV-1047-WCB, 2015 WL 1069179 (E.D. Tex. Mar. 11, 2015) ....................... passim

*TruePosition, Inc. v. Polaris Wireless, Inc.*,
   No. 12-646, 2013 WL 5701529 (D. Del. Oct. 21, 2013) ............................................................ 3

*Unifi Scientific Batteries, LLC v. Sony Mobile Commn's AB*,
   No. 6:12cv224 JDL, 2014 WL 4494479 (E.D. Tex. Jan. 14, 2014) ....................................... 4, 8

*Universal Elecs., Inc. v. Universal Remote Control, Inc.*,
   943 F. Supp. 2d 1028 (C.D. Cal. 2013) ................................................................................ 9, 10

*Unwired Planet, LLC v. Square, Inc.*,
   No. 3:13-cv-00579, 2014 WL 4966033 (D. Nev. Oct. 3, 2014) ................................................ 6

*Wonderland Switzerland AG v. Britax Child Safety, Inc.*,
   No. 0:19-cv-02475, 2020 WL 7075122 (D.S.C. Dec. 2, 2020) ................................................. 4

**Statutes**

35 U.S.C. § 101 ................................................................................................................................ 4

35 U.S.C. § 102 ............................................................................................................................ 4, 5

35 U.S.C. § 103 ............................................................................................................................ 4, 5

35 U.S.C. § 311(b) ........................................................................................................................... 4

35 U.S.C. § 315(b) ........................................................................................................................... 5

35 U.S.C. § 315(e)(2) ....................................................................................................................... 4

**Regulations**

37 C.F.R. § 42.100 ............................................................................................................. 8

37 C.F.R. § 42.100(b) ........................................................................................................ 9

I.  **INTRODUCTION**

Deciding whether to stay litigation pending IPRs is subject to the Court's discretion and dependent on the facts of the specific case. Indeed, at the Initial Pretrial Conference, when discussing Micron's plan to bring its stay motion, the Court said: "[J]ust because I granted a stay in one case doesn't mean I'm going to grant it in another. As I said, I don't have a uniform deal." (3/3/22 Conf. Tr. at 29:25-30:2.) Since the PTAB has not yet instituted any of Micron's IPRs and Micron delayed filing the last of their IPRs until the eve of the *Markman* hearing (over eleven months after the filing of the complaints), the Court should find that a stay is not appropriate.

II. **BACKGROUND**

On April 28, 2021, just prior to filing its complaints in the Waco division (Dkt. 1),[1] Netlist sent a standards-compliant RAND offer letter to Micron, inviting Micron to engage in licensing discussions for Netlist's patents and explaining that "Netlist will not be initiating any lawsuit against Micron with service of the complaints unless Netlist and Micron are ultimately unable to reach an agreement on a RAND license for Micron's RDIMM and LRDIMM products within a reasonable amount of time from Netlist's RAND offer set forth above." (Hong Decl. ¶¶3-5, Ex. A at 4.) On June 17, 2021, after it became clear that Micron was unwilling to engage in RAND licensing negotiations, Netlist served the complaints. (Hong Decl. ¶4; Dkts. 15-17.)

When the cases were transferred to this Court, the parties had already served infringement and invalidity contentions and begun the claim construction process, including exchanging terms and proposed constructions, and disclosing extrinsic evidence. Micron had filed its opening claim construction brief. Since the transfer, the parties have completed claim

---

[1] All "Dkt." citations refer to the docket entries for both the -134 and -136 cases unless indicated otherwise.

1

construction briefing, and the Court has set the *Markman* hearing for May 12, 2022. (Dkt. 54.)

While the parties engaged in these significant litigation events, Micron has been doubly busy: It filed five IPR petitions seeking to invalidate each of the patents-in-suit. The first two petitions against the '035 and '608 Patents, were filed on December 23, 2021. The next, against the '833 Patent, was filed on January 14, 2022. The last two petitions, against the '314 Patent, were filed on March 30, 2022—two days before Micron filed this Motion and **more than eleven months** after Netlist filed its complaints. None of these IPRs have been instituted.

### III.  LEGAL STANDARDS

There is no *per se* rule that patent cases should be stayed pending PTO proceedings because such a rule "would invite parties to unilaterally derail litigation." *Realtime Data LLC v. Actian Corp.*, No. 6:15-CV-463, 2016 WL 3277259, at *1 (E.D. Tex. June 14, 2016). Determining whether to stay proceedings pending *inter partes* review of a patent is a matter committed to the district court's discretion, *see Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988), to be decided on a case-by-case basis. *See Comcast Cable Commn's Corp. v. Finisar Corp.*, No. 06-cv-04206-WHA, 2007 WL 1052883, at *1 (N.D. Cal. Apr. 5, 2007).

Courts generally consider three factors in determining whether to stay a patent lawsuit in light of IPR proceedings: (1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving party; (2) whether a stay will simplify the issues in question; and (3) the status of the litigation at the time a stay is requested. *See MiMedx Group, Inc. v. Tissue Transplant Tech. Ltd.*, No. SA-14-CA-719, 2015 WL 11573771, at *2 (W.D. Tex. Jan. 5, 2015). The second factor, simplification, is typically deemed the most important. *NFC Tech. LLC v. HTC Am., Inc.*, No. 2:13-cv-1058, 2015 WL 1069111, at *4 (E.D. Tex. Mar. 11, 2015). The party seeking a stay bears the burden of showing that such action is appropriate. *See Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936). A final decision is made with "an eye toward maintaining an

even balance between the competing interests of the parties at issue." *TruePosition, Inc. v. Polaris Wireless, Inc.*, No. 12-646, 2013 WL 5701529, at *2 (D. Del. Oct. 21, 2013).

IV.   **ARGUMENT**

   A.   **A Stay Would Not Simplify the Issues**

Micron acknowledges that the PTAB has not yet issued **any** institution decisions on the pending IPRs. Mot. at 3. In fact, the first institution decision is not due until late July 2022, and the parties will not receive the institution decisions on all pending IPRs until at least October 2022 (but may be longer depending on when and if the PTAB grants a filing date for Micron's last IPRs against the '314 Patent). Attempting to predict whether the PTAB will grant any of the petitions (and what might happen afterward) is an exercise in speculation. Therefore, staying the case at this stage will not simplify any issues and will only lead to unjustifiable delays. *See Realtime*, 2016 WL 3277259, at *2 ("Because the PTAB has not granted any of the petitions, Defendants' assertion that the PTAB will invalidate the claims of the patent – and therefore simplify the issues – is purely speculative."); *see also Sisvel Intern., S.A. v. ZTE (USA), Inc.*, No. 3:20-cv-01289-M, Dkt. 43 (N.D. Tex. June 21, 2021) (denying stay motion because the PTAB had not yet instituted any of the petitions).

Federal Circuit Judge Bryson has observed that "the most important factor in determining whether to stay litigation pending inter partes review [is] whether the PTAB has acted on the defendant's petition for review." *Trover Grp., Inc. v. Dedicated Micros USA*, No. 2:13-CV-1047-WCB, 2015 WL 1069179, at *4 (E.D. Tex. Mar. 11, 2015) (Bryson, J., sitting by designation) (collecting cases and noting that the majority of courts have denied or postponed ruling on stay requests when the PTAB has not yet acted on the petition for review). Since *Trover*, many district courts addressing this issue have reached the same conclusion. *See, e.g., Enventure Global Tech. Inc. v. Weatherford U.S., L.P.*, No. 4:19-2397, 2020 WL 12573280, at

*7 (S.D. Tex. Dec. 11, 2020) ("Courts generally deny requests to stay made before the PTAB institutes IPR proceedings on any at-issue patents."); *Wonderland Switzerland AG v. Britax Child Safety, Inc.*, No. 0:19-cv-02475, 2020 WL 7075122, at *3 (D.S.C. Dec. 2, 2020) (noting that denying a motion to stay as premature if the PTO has not yet granted a petition for review "appears to be the majority approach."… "The Court is wary of delaying a case while the parties wait for a review that may never come.").

Micron's argument is founded on hypothetical outcomes: ***If*** the PTAB institutes review on all the challenged claims, and ***if***, two years from now, the PTAB invalidates those claims, ***then*** the issues in this litigation may be simplified. But Micron does not, and cannot, provide evidence that these petitions ***will be*** instituted. Micron avoids the alternate scenario that the petitions are not instituted, except to say "the stay can be lifted and the litigation can progress without substantial delay" Mot. at 4. As explained below, this is not an accurate depiction of what will happen if the Court grants this pre-institution stay.

With respect to another hypothetical scenario, in which the PTAB institutes but does not determine all claims unpatentable, Micron argues, "35 U.S.C. § 315(e)(2) provides for invalidity estoppel…." Mot. at 6. But this statement ignores the fact that IPR challenges are limited to only patents or printed publications under §§ 102 and 103. *See* 35 U.S.C. § 311(b). Here, Micron has alleged a host of other defenses in this lawsuit that will not be implicated by the PTAB's findings, including invalidity challenges under §§ 101 and 112, as well as potential §§ 102 and 103 art reliant on systems. (Dkt. 20.) Thus, even if the PTAB does not determine all claims unpatentable, estoppel will not preclude all of Micron's proffered invalidity arguments. *See Unifi Scientific Batteries, LLC v. Sony Mobile Commn's AB*, No. 6:12cv224 JDL, 2014 WL 4494479, at *2 (E.D. Tex. Jan. 14, 2014) (finding estoppel argument not persuasive because "even if the

Defendants are estopped from asserting invalidity under 102 or 103 as to certain prior art, all Defendants may maintain that the asserted claims are invalid under 35 U.S.C. § 112 ¶¶ (1) and (2)."); *see also Saint Lawrence Commc'ns LLC v. ZTE Corp.*, No. 2:15-CV-349-JRG, 2017 WL 3396399, at *2 (E.D. Tex. Jan. 17, 2017) (pending IPRs would "have a negligible impact on streamlining the case" where numerous defenses would remain live after IPR decision).

As other courts have recognized, the filing of an IPR request does not, in and of itself, simplify the issues in a case. *See DiCon Fiberoptics, Inc. v. Preciseley Microtechnology Corp.*, No. 15-cv-1362-BLF, 2015 WL 12859346, at *2 (N.D. Cal. Oct. 13, 2015); *see also Carucel Investments, L.P. v. Volkswagen Group of Am., Inc.*, No. 3:18-cv-3333-M, Dkt. 26 (N.D. Tex. June 24, 2019). Because "[t]he question of whether the stay will lead to simplification of the issues before the Court depends very much on whether the PTAB decides to grant the petition," *Trover*, 2015 WL 1069179, at *4, this factor weighs heavily in Netlist's favor.

### B.     Netlist Would Be Prejudiced by a Stay

Various district courts have adopted a set of four sub-factors for evaluating the prejudice prong: "(1) the timing of the reexamination request; (2) the timing of the request for stay; (3) the status of reexamination proceedings; and (4) the relationship of the parties." *Ever Win Int'l Corp. v. Radioshack Corp.*, 902 F. Supp. 2d 503, 508 (D. Del. 2012). The balance of these factors weighs in Netlist's favor and against a stay.

*First*, with respect to the timing of the reexamination request, Micron waited **eleven months** to finish filing its IPR petitions.[2] Many courts have found this length of delay (and even

---

[2] The complaints were filed in these cases on April 28, 2021. Micron filed IPR2022-00236 and -00237 on December 23, 2021 (eight months later); IPR2022-00418 on January 14, 2022 (almost nine months later); and IPR2022-00744 and -00745 on March 30, 2022 (more than eleven months later). *See* 35 U.S.C. § 315(b) (instructing that IPR petitions must be filed within one year of serving the complaint).

5

shorter delays) to support denying a stay. *See, e.g., Realtime*, 2016 WL 3277259, at *3 (between seven and eleven months); *Ellenby Techs., Inc. v. Fireking Security Group*, 533 F. Supp. 3d 656, 662 (N.D. Ill. 2021) (ten months); *Evolutionary Intelligence LLC v. Yelp Inc.*, No. 13-cv-3587, 2013 WL 6672451, at *9 (N.D. Cal. Dec. 18, 2013) (over eleven months). Had Micron filed its petitions closer to the start of the litigation, the parties and the Court could have avoided the time and expense of acting on Micron's transfer motion (including substantial venue discovery) and engaging in the claim construction process (including filing all *Markman* briefs). A pre-institution stay would only exacerbate the prejudice Micron's delay in filing IPRs has caused. *See Unwired Planet, LLC v. Square, Inc.*, No. 3:13-cv-00579, 2014 WL 4966033, at *4 (D. Nev. Oct. 3, 2014) ("If Defendant had filed its [IPR] petitions… nearer the beginning of the present litigation rather than nine months later, a stay instituted at or about that time would have resulted in mere delay. But here, Plaintiff had already litigated the case through Phase 1 discovery and *Markman* briefings when Defendant filed the motion to stay.").[3]

**Second**, since Micron could have filed its IPR petitions much earlier, Micron could have also moved to stay the case before any significant case events had taken place.

**Third**, the status of the IPR proceedings (pre-institution) supports Netlist's position, as explained above. *See SAGE Electrochromics, Inc. v. View, Inc.*, No. 12-cv-06441, 2015 WL 66415, at *4 (N.D. Cal. Jan. 5, 2015) (sub-factor (3) "weighs against issuing a stay when the PTO has not yet decided whether to grant IPR.").

**Fourth**, the fact that Netlist and Micron are competitors undercuts Micron's argument

---

[3] As the court in *Signal IP, Inc. v. Ford Motor Co.* pointed out, "there can be good reasons for delay in filing an *inter partes* review proceeding. One reason would be if the parties are having good faith settlement discussions." No. 14-cv-13729, 2015 WL 5719671, at *6 n.4 (E.D. Mich. Sept. 30, 2015). At no point during the time frame between the filing of the complaints and the filing of all Micron's IPRs has Micron engaged in good-faith settlement discussions.

6

that "if Netlist prevails in the IPRs, a stay will not diminish Netlist's ability to receive monetary damages for the stayed time period." Mot. at 1. This case is not just about monetary damages. Netlist also sells its own memory device products. (*See generally* Park Decl.) Courts have commonly found prejudice inherent in staying a case involving competitors. *See, e.g., MiMedx*, 2015 WL 11573771, at *2 (finding factor weighs against stay where "MiMedx argues that the Defendants are its direct competitors, and therefore a stay would 'afford[] Defendants the opportunity to enhance the market share of their new products to the detriment of MiMedx and its exclusive patent rights.'")[4]

Moreover, even if Netlist and Micron were not direct competitors, a stay would irreparably harm Netlist's licensing business—from which Netlist derives revenue—because it would chill Netlist's ability to license the asserted patents. Also relevant to the prejudicial effect of a stay is the question of whether a delay in enforcing patent rights "creates a cloud over [the patent owner's] ability to license its intellectual property." *Pers. Audio LLC v. Google, Inc.*, 230 F. Supp. 3d 623, 627 (E.D. Tex. 2017); *see also Realtime*, 2016 WL 3277259, at *2 ("[That] Realtime is a non-practicing entity and is merely pursuing monetary damages would not preclude Realtime from experiencing prejudice if the Court granted Defendant's motion to stay . . . Realtime has an interest in the timely enforcement of its patent rights.")

In addition to the prejudice shown under the *Ever Win* factors, patent owners have a general right to timely enforcement of their patent rights. *See Trover*, 2015 WL 1069179, at *2

---

[4] That Netlist has not moved for a preliminary injunction is inconsequential in determining the appropriateness of a stay. *See Netlist, Inc. v. Smart Storage Sys., Inc.*, Case No. 13-cv-5889, 2014 WL 4145412, at *3 (N.D. Cal. Aug. 21, 2014) (denying stay pending IPR and stating "Netlist argues that a stay could result in a loss of its market share that would not be readily compensable by money damages." . . . "a showing of the potential for prejudice does not depend on whether it has pursued a preliminary injunction here.").

7

(collecting cases); *see also Samsung Elecs. Co. v. Blaze Mobile, Inc.*, No. 5:21-cv-02989, 2022 WL 103552, at *4 (N.D. Cal. Jan. 11, 2022) (denying motion for pre-institution stay in part because "Blaze has an interest in the timely enforcement of its patent rights."); *Ellenby*, 533 F. Supp. 3d at 662 ("the Court begins from the premise that patent holders have an interest in the timely adjudication of their infringement claims."). Further, the risk of losing important documentary and testimonial evidence during the pendency of the stay is a factor entitled to consideration. *See Trover*, 2015 WL 1069179, at *2; *see also Kirsch R&D, LLC. v. Intertape Polymer Corp.*, No. 8:20-cv-1982, 2021 WL 2905436, at *3 (M.D. Fla. April 7, 2021) (finding prejudice where a lengthy stay could cause the loss of important testimonial and documentary evidence). Netlist expects to request discovery from third parties, such as the JEDEC Solid State Technology Association. The risk of losing evidence during a stay is particularly significant where certain types of proof rest with third parties having no incentive to preserve evidence for years while the IPR proceeding is pending. *See Trover*, 2015 WL 1069179, at *2.

Micron argues, "[i]f Micron IPRs do not institute, then at most, Netlist will have had its litigation delayed by only four to six months." Mot. at 1. But, once again, this only takes into account a single scenario: non-institution. If the PTAB institutes but does not invalidate all challenged claims, those final decisions may not be made before April 2024[5] and then are subject to appeal by Micron and possible remand back to the PTAB. Realistically, these cases may not be revived by this Court until 2026. Recognizing this potential for years-long delay, many courts have found prejudice to plaintiffs. *See, e.g., Unifi*, 2014 WL 4494479 at *2 ("The Court has an obligation 'to secure the just, speedy, and inexpensive determination of every action.'") (quoting

---

[5] The PTAB should issue final decisions by one year after institution, but this time can be extended up to six months for good cause. *See* 37 C.F.R. § 42.100.

8

Fed. R. Civ. P. 1). *Signal IP*, 2015 WL 5719671, at *6 ("Staying this case until completion of the inter partes review proceedings would mean that this case would likely not get started for at least two-and-a-half years after the filing of the complaints. . . Such a pace would not be appropriate for the prompt dispatch of judicial business.").

Finally, Micron argues that "if this Court grants a stay before the scheduled *Markman* hearing, this Court may benefit from any statements and reasoning the PTAB makes in construing the parties' disputed claim terms." Mot. at 5. But Micron has not asked the PTAB to construe a single claim term in any one of its five petitions. And even if the PTAB provides any claim constructions, the Court could take this into account after a claim construction ruling because it retains the power to "clarify and revise claim constructions at any point before the case goes to the jury." *Dali Wireless, Inc. v. CommScope Techs. LLC*, No. CV 19-952 (MN), 2022 WL 621547, at *5 (D. Del. Mar. 3, 2022) (citing cases). Additionally, the PTAB is empowered to consider a district court's prior claim construction determination. *See* 37 C.F.R. § 42.100(b). Thus, it does not matter which body issues its claim construction ruling first.

### C. The Current State of the Proceedings Weighs Against a Stay

Micron argues "[t]he status of litigation favors a stay because this case is in its infancy." Mot. at 7. That is not so. Courts have recognized, in cases with scheduling orders similar to the present case, "[t]hat the schedule in this case set discovery to occur after claim construction does not mean that the case remains in its procedural infancy until discovery is well underway." *Universal Elecs., Inc. v. Universal Remote Control, Inc.*, 943 F. Supp. 2d 1028, 1031-32 (C.D. Cal. 2013). Here, the parties have already exchanged infringement and invalidity contentions. Claim construction briefing was completed on April 7, weeks before Micron's reply in support of its stay motion is due. The *Markman* hearing is set for May 12. This case is well underway. *See Trover*, 2015 WL 1069179, at *3 ("By the time the stay motion was filed in this case, the

9

parties had engaged in substantial discovery and had initiated the claim construction process. By the time briefing of the stay motion was finished . . . the claim construction briefing had been completed."); *Kirsch*, 2021 WL 2905436, at *2 (noting that since the complaint had been filed almost a year earlier, invalidity contentions served, and claim construction deadlines approaching, "this matter has progressed to the point where a stay is disfavored.").

Further, it is Micron's own delay in filing IPR petitions that has forced its request for a stay to butt up against the claim construction deadlines. *See Universal Elecs.*, 943 F. Supp. 2d at 1032 ("While prior art searching and preparing PTO petitions takes time. . . Defendants could have filed its petitions and this motion before claim construction. This factor weighs against a stay."); *Trover*, 2015 WL 1069179, at *3-4 ("The defendants waited for nearly a year after the complaints were filed against them before filing their petition. . . . The pattern of delay on the defendants' part cuts against granting a stay.").

Because claim construction briefing is complete, this factor supports denying Micron's Motion. *See MiMedx*, 2015 WL 11573771, at *2 ("the parties have exchanged infringement and invalidity contentions and written discovery, and have filed their joint claim construction and prehearing statement. . . The Court finds that the third factor also favors denying a stay.").[6]

## V.  CONCLUSION

Micron moved for a stay prior to any IPR institution decisions and delayed its IPR petitions until just before the statutory filing deadline. Further, Netlist will suffer prejudice if Micron's request to avoid litigating this case is granted. For these reasons, the Court should deny Micron's Motion to Stay.

---

[6] Micron claims that "Before the case began, Netlist waited over a month and a half to serve its Original Complaints." Mot. at 4-5. As explained above (p. 1), Netlist informed Micron that it would not immediately serve the complaints in order to engage in FRAND discussions.

Dated: April 19, 2022

*/s/ Jaime K. Olin*
Paul J. Skiermont (TX Bar No. 24033073)
Steven Hartsell (TX Bar No. 24040199)
Jaime Olin (TX Bar No. 24070363)
Ryan A. Hargrave (TX Bar No. 24071516)
Michael D. Ricketts (TX Bar No. 24079208)
SKIERMONT DERBY LLP
1601 Elm St., Ste. 4400
Dallas, TX 75201
Phone: (214) 978-6600
Fax: (214) 978-6601
pskiermont@skiermontderby.com
shartsell@skiermontderby.com
jolin@skiermontderby.com
rhargrave@skiermontderby.com
mricketts@skiermontderby.com

Rex Hwang (CA Bar No. 221079)
SKIERMONT DERBY LLP
800 Wilshire Blvd., Ste. 1450
Los Angeles, CA 90017
Phone: (213) 788-4500
Fax: (213) 788-4545
rhwang@skiermontderby.com

J. Stephen Ravel (TX Bar No. 16584975)
Kelly Ransom (TX Bar No. 24109427)
KELLY HART & HALLMAN LLP
303 Colorado, Suite 2000
Austin, Texas 78701
Tel: (512) 495-6429
steve.ravel@kellyhart.com
kelly.ransom@kellyhart.com

*Attorneys for Plaintiff*
Netlist, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a) on this the 19th day of April, 2022.

*/s/ Jaime K. Olin*
