# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

NETLIST, INC.,

                    Plaintiff,

v.

MICRON TECHNOLOGY, INC., MICRON
SEMICONDUCTOR PRODUCTS, INC., and
MICRON TECHNOLOGY TEXAS LLC,

                    Defendants.

Civil Action No. 1:22-cv-00136-LY

**JURY TRIAL DEMANDED**

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO TEMPORARILY LIFT
STAY AND MOTION FOR LEAVE TO FILE AN AMENDED ANSWER,
AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................. 1

II.     ARGUMENT ........................................................................................................ 2

        A.      The Court Should Deny Micron's Request to Temporarily Lift the Stay.............. 2

                1.      Micron Seeks to Temporarily Lift the Stay to Gain a Tactical
                        Advantage ................................................................................ 2

                2.      Micron Failed to Analyze the Factors Courts Must Consider in
                        Determining Whether to Lift a Stay.......................................... 3

                3.      Under the *Murata* Factors, the Court Should Deny Micron's Request
                        to Temporarily Lift the Stay ..................................................... 3

        B.      Micron Should Not Be Granted Leave to Amend ................................. 7

                1.      Legal Standard .......................................................................... 7

                2.      Micron's Proposed Amendment Is Both Futile and an Improper
                        Attempt to Cure its Failure to Plead Counterclaims in EDTX .................. 7

                3.      Netlist Would Suffer Undue Prejudice if Amendment Is Allowed .......... 10

                4.      Micron Seeks Leave to Amend in Bad Faith ........................................... 19

III.    CONCLUSION..................................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**

*Auster Oil & Gas, Inc. v. Stream*,
 764 F.2d 381 (5th Cir. 1985).................................................................................. 20

*Austin v. State Farm Lloyds*,
 No. 16-cv-447-DAE, 2018 WL 1605755 (W.D. Tex. Jan. 2, 2018)......................... 3

*Baxter Healthcare Corp. v. Becton, Dickinson and Co.*,
 No. 3:17-cv-2186, 2021 WL 22553 (S.D. Cal. Jan. 4, 2021)................................. 6

*BMC Resources, Inc. v. Paymentech, L.P.*,
 No. 3-03-CV-1927-M, 2004 WL 981079 (N.D. Tex. May 5, 2004) ...................... 17

*BrideLux, Inc. v. Cree, Inc*.,
 No. 9:06-CV-240, 2007 WL 9724143 (E.D. Tex. Feb. 5, 2007) ........................... 17

*Canady v. Erbe Elektromedizin GmbH*,
 271 F. Supp. 2d 64 (D.D.C. 2002) ......................................................................... 4

*Datamize Inc. v. Fid. Brokerage Servs., LLC*,
 No. 2:03-cv-321-DF, 2004 WL 1683171 (E.D. Tex. Apr. 22, 2004) ..................... 17

*DataTreasury Corp. v. First Data Corp.*,
 243 F.Supp.2d 591 (N.D. Tex. 2003)..................................................................... 19

*DivX, LLC v. Netflix, Inc.*,
 CV 19-1602, 2022 WL 1208167 (C.D. Cal. Mar. 29, 2022) ................................... 4

*Document Generation Corp. v. Allscripts, LLC*,
 No. 6:08-CV-479, 2009 WL 10677279 (E.D. Tex. May 5, 2009) .......................... 16

*G&C Land v. Farmland Mgmt. Servs.*,
 587 Fed. Appx. 99 (5th Cir. 2014) ......................................................................... 21

*Graybar Elec. Co. v. Weyerhaeuser Co.*,
 No. 4:18-cv-4128, 2019 WL 12073982 (W.D. Ark. Jul. 11, 2019) ....................... 20

*Halbert v. City of Sherman*,
 33 F.3d 526 (5th Cir. 1994)..................................................................................... 7

*Halo Elecs., Inc. v. Bel Fuse Inc.*,
 No. 07-cv-6222, 2008 WL 1991094 (N.D. Cal. May 5, 2008) ............................... 11

*Hologram USA, Inc. v. Pulse Evolution Corp.*,
 No. 2:14-CV-0772, 2017 WL 444528 (D. Nev. Jan. 31, 2017)............................... 8

*Hydro-Quebec v. Valence Tech., Inc.*,
　No. A-06-CA-111-SS (W.D. Tex. Nov. 11, 2011, Dkt. 275) .................................................. 20

*In re ASM Int'l, N.V.*,
　774 F. App'x 650 (Fed. Cir. 2019) .......................................................................................... 15

*Jones v. Robinson Property Group, L.P.*,
　427 F.3d 987 (5th Cir. 2005) ..................................................................................................... 7

*Leal v. McHugh*,
　731 F.3d 405 (5th Cir. 2013) ..................................................................................................... 7

*Leap Wireless Int'l, Inc. v. MetroPCS Comm'ns, Inc.*,
　No. 2:06-CV-240, 2007 WL 541428 (E.D. Tex. Feb. 15, 2007) ............................................... 9

*Legate v. Livingston*,
　822 F.3d 207 (5th Cir. 2016) ..................................................................................................... 9

*Mobility Elecs., Inc. v. Am. Power Conversion Corp.*,
　No. 07-cv-83, 2007 WL 9724768 (E.D. Tex. Oct. 10, 2007) .................................................. 19

*Murata Machinery USA v. Daifuku Co.*,
　830 F.3d 1357 (Fed. Cir. 2016) ............................................................................................. 4, 6

*Netlist Inc. v. Micron Tech., Inc.*,
　No. 2:22-cv-00203-JRG-RSP (E.D. Tex. Jun. 10, 2022) .......................................................... 8

*Netlist Inc. v. Micron Tech., Inc.*,
　No. 2:22-cv-00294-JRG-RSP (E.D. Tex. Aug. 1, 2022) ........................................................... 8

*Netlist, Inc. Samsung Elec. Co., Ltd. et al*,
　No. 21-cv- 463-JRG (E.D. Tex. Dec. 20, 2021) ..................................................................... 18

*Netlist, Inc. v. Samsung Elec. Co., Ltd., et. al.*,
　No. 22-cv-293-JRG (E.D. Tex. Aug. 1, 2022) ........................................................................ 18

*Netlist, Inc. v. SK Hynix Inc.*,
　No. 6:20-CV-00194-ADA, 2021 WL 2954095 (W.D. Tex. Feb. 2, 2021) ....................... 15, 16

*Network-1 Sec. Solutions, Inc. v. D-Link Corp.*,
　433 F.Supp.2d 795 (E.D. Tex. 2006) ...................................................................................... 19

*Pragmatus AV, LLC v. Yahoo! Inc.*,
　No. 11-902-LPS-CJB, 2013 WL 4629000 (D. Del. Aug. 28, 2013) ........................................ 15

*Procter & Gamble Co. v. Kraft Foods Glob., Inc.*,
　549 F.3d 842 (Fed. Cir. 2008) ................................................................................................... 3

*Roxane Lab., Inc. v. Abbott Lab.*,
  No. 2:12-cv-312, 2012 WL 12872690 (S.D. Ohio Aug. 21, 2012)........................................ 17

*Sea-Land Service, Inc. v. R.V. D'Alfonso Co.*,
  727 F.2d 1 (1st Cir. 1984) ................................................................................................... 17

*Simmons v. Sabine River Authority Louisiana*,
  732 F.3d 469 (5th Cir. 2013)................................................................................................ 10

*SIPCO, LLC v. Emerson Elec. Co.*,
  No. 15-cv-907, 2016 WL 7743496 (E.D. Tex. Jul. 1, 2016).................................................. 13

*The Coca-Cola Co. v. Pepsi-Cola Co.*,
  500 F. Supp. 2d 1364 (N.D. Ga. 2007) ................................................................................... 9

*Wizards of the Coast LLC v. Cryptozoic Entm't LLC*,
  309 F.R.D. 645 (W.D. Wash. 2015)........................................................................................ 20

**Other Authorities**

6 C. Wright, A. Miller & M. Kane, Fed. Prac. & Proc. § 1410 (2d ed. 1990)................................ 9

**Rules**

Fed. R. Civ. P. 13(a)(1)............................................................................................................. 8

Fed. R. Civ. P. 15(a)(2)............................................................................................................. 7

## I.     INTRODUCTION

Micron's false accusations of "forum shopping" and "end-running the stay" are particularly ironic given Micron's own actions here and in the Eastern District of Texas. Rather than file its proposed counterclaims in EDTX, where the subject patents are already in active litigation, Micron seeks to sneak those patents into this stayed case through the back door. Micron's Motion is a transparent attempt to avoid litigating in EDTX, which is a proper forum for those patents, and delay resolution of Netlist's infringement allegations as long as possible.

*First*, the Court should deny Micron's request to temporarily lift the stay to litigate a motion that, if granted, would give Micron a significant strategic advantage in this case. Framing its cursory request as "temporary" makes clear that Micron wants the Court to open the door just wide enough to add patents from active EDTX litigations and then shut the door again immediately, forcing the new patents into a stayed case. Allowing Micron to assume this unilateral power over the conduct of the lawsuit would put Netlist at an extreme disadvantage once the stay is permanently lifted.

In addition, Micron's "Motion" to temporarily lift the stay consists of nothing more than two cursory mentions in the introduction and conclusion sections of the brief. Instead of analyzing (or even mentioning) the factors the Federal Circuit instructs courts to consider in determining whether to lift a stay, Micron devotes the entirety of its brief to the substance of its Motion for Leave to Amend to File an Amended Answer, Affirmative Defenses, and Counterclaims ("Motion for Leave"). Regardless, all the factors weigh against temporarily lifting the stay, and the Court can—and should—deny Micron's entire Motion on this basis.

***Second***, while the merits of Micron's Motion for Leave should not be considered unless/until the stay is lifted,[1] in an abundance of caution, Netlist sets forth herein its opposition to that substantive motion, as well. At the outset, Micron's proposed amendment is futile. Micron failed to bring compulsory counterclaims for non-infringement in the EDTX lawsuits, and has therefore waived those counterclaims in any other proceeding, including this one. Micron also misapplies the first-to-file rule and cannot show that it meets the requirements to apply the relation back doctrine. As a result, the EDTX patents must be maintained in EDTX. The proposed amendment would also be unduly prejudicial to Netlist since the case was stayed on the even of the claim construction hearing and adding new patents would only extend the timeline once the stay is permanently lifted. And Micron seeks this amendment in bad faith—as a tactical advantage to delay resolution of Netlist's infringement allegations. The Court should reject Micron's ploy and deny the Motion for Leave.

## II.    ARGUMENT

### A.  The Court Should Deny Micron's Request to Temporarily Lift the Stay

#### 1.   Micron Seeks to Temporarily Lift the Stay to Gain a Tactical Advantage

On May 11, 2022, pursuant to Micron's request and over Netlist's opposition, the Court stayed this case "pending further order of the court" after Micron filed IPR petitions challenging the asserted patents. (Dkt. 69 at 4.) The stay remains in place as of the time of this filing.

Micron's motive for seeking to only **<u>temporarily</u>** lift the stay is to delay resolution of Netlist's infringement allegations as long as possible. Lifting the stay to allow Micron's proposed amendment would result in seven patents currently in active litigation in EDTX becoming part of this case—a case that is presently stayed. Micron's ploy is doubly problematic

---

[1] *See* Netlist's concurrently filed Motion for Protective Order Regarding Micron's Motion for Leave to Amend (Dkt. 72), at Dkt. 73.

considering IPR proceedings have not been instituted against any of the EDTX patents—and not even filed against two of them—which means there is no reasonable basis to stay all litigation proceedings involving those patents. Temporarily lifting the stay here to bring the EDTX patents into this case and then immediately resuming the stay would delay adjudication of claims actively being litigated in EDTX. The Court should not reward Micron's scheme to gain an strategic advantage by "temporarily" lifting the stay that **Micron** requested in the first place.

### 2. Micron Failed to Analyze the Factors Courts Must Consider in Determining Whether to Lift a Stay

Micron also fails to provide the Court with any explanation for why lifting the stay is procedurally proper at this time. Despite cursorily styling its brief (in part) as a Motion to Temporarily Lift Stay, Micron does not devote a single word of its sixteen-page motion to analyzing, or even mentioning, the factors courts consider in deciding whether to lift a stay. Instead, Micron skips that critical step to focus entirely on arguments related to its Motion for Leave. Further, since Micron should have, but chose not to, analyze the Federal Circuit and district court case law relating to motions to lift stays, it should not be permitted to address this issue on reply. *See Austin v. State Farm Lloyds*, No. 16-cv-447-DAE, 2018 WL 1605755, at *1 n.2 (W.D. Tex. Jan. 2, 2018) (disregarding new arguments because "[t]he point of a reply brief is to reply to the non-movant's arguments, not raise new arguments to which the non-movant will not have an opportunity to respond").

### 3. Under the *Murata* Factors, the Court Should Deny Micron's Request to Temporarily Lift the Stay

#### a) Legal Standard

"The ability to stay cases is an exercise of a court's inherent power to manage its own docket," *Procter & Gamble Co. v. Kraft Foods Glob., Inc.*, 549 F.3d 842, 848-49 (Fed. Cir. 2008) and "a court that imposes a stay of litigation has the inherent power and discretion to lift

the stay." *Canady v. Erbe Elektromedizin GmbH*, 271 F. Supp. 2d 64, 74 (D.D.C. 2002). The Federal Circuit has instructed that "[a] court may lift a stay if the circumstances supporting the stay have changed such that the stay is no longer appropriate." *Murata Machinery USA v. Daifuku Co.*, 830 F.3d 1357, 1361 (Fed. Cir. 2016). District courts typically consider the same factors in deciding whether to lift a stay as when deciding whether to implement one: "(i) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (ii) whether a stay will simplify the issues in question and trial of the case; and (iii) whether discovery is complete and whether a trial date has been set." *Id.; see also DivX, LLC v. Netflix, Inc.*, No. 19-1602, 2022 WL 1208167, at *3 (C.D. Cal. Mar. 29, 2022) ("When determining whether to lift an existing stay, courts typically apply the same standard that applies to determine whether to impose a stay in the first place."). Courts may also consider the totality of the circumstances, including the burden of litigation on the court and the parties. *Id.* at 1362.

This Court considered the *Murata* factors in reaching its decision to stay this case. None of the relevant circumstances have changed since that time. Accordingly, based on the Federal Circuit's opinion in *Murata* and subsequent district court cases applying that decision, lifting the stay, even temporarily, is not the appropriate outcome for Micron's Motion.

### b) Factor 1: "Whether a stay would unduly prejudice or present a clear tactical advantage to the non-moving party"

In its Order Granting Stay, the Court found that a stay would not unduly prejudice or present a clear tactical disadvantage to Netlist and agreed with Micron that a stay pending the PTAB's institution decisions would not present a significant delay. (Dkt. 68 at 2.)

Since then, the IPR proceedings have resulted in a mixed bag of institution decisions. Of the five petitions Micron filed, two have been instituted, one has been denied (though Micron has requested rehearing), and two are yet to be decided. *See Micron Tech., Inc. v. Netlist Inc.*,

4

IPR2022-00236 (Paper 16), IPR2022-00237 (Paper 15), IPR2022-00418 (Paper 14). The IPR proceedings will continue, at least for some of the asserted patents in this action, for at least the next ten months. Therefore, none of the facts underlying the Court's decision on this factor have changed since the Court rejected Netlist's arguments and granted Micron's requested stay.

Even if the Court considers Micron (the party that originally sought the stay) to be the "non-moving party" that may be prejudiced if the stay is maintained, that would not change the analysis. Importantly, Micron has not demonstrated, or even attempted to demonstrate, that it would be prejudiced by keeping the stay in place at present. Additionally, in its Motion to Stay, Micron represented to the Court, and the Court agreed, that there would be no prejudice from pausing this case because "if the IPRs do institute, then ***both parties*** will benefit by having the case dispositive issues resolved by specially trained IPR judges without having to start devoting expensive resources to discovery ***and other issues*** in this parallel litigation." (Dkt. 58 at 5 (emphasis added).) Granting Micron's request would mean disregarding Micron's reasons for urging the Court to enter a stay in the first place. It would also mean the stay can be temporarily lifted not when circumstances supporting the stay have changed, but whenever it will benefit Micron. That is not the law under *Murata.*

Moreover, Micron proffered no explanation for why it needs resolution on its Motion for Leave **now**, while the stay is in place, rather than after the PTAB proceedings are resolved and the stay is properly lifted at that time. As Micron points out, the Court has not yet set a deadline to amend pleadings. (Mot. at 7.) Certainly, amending its answer now would give Micron a tactical advantage by allowing it a *de facto* transfer of patents from the active cases in EDTX to this stayed case. But refusing to give Micron that advantage would not cause it undue prejudice.

### c) Factor 2: "Whether a stay will simplify the issues in question and trial of the case"

In granting the stay, the Court also agreed with Micron that a stay would simplify the issues in question, noting that "Micron's petitions cover all the asserted claims in each Asserted Patent, and the PTAB's decisions may significantly streamline the issues before the court." (Dkt. 68 at 3.) Nothing has changed in this respect. As explained above, the PTAB is reviewing validity arguments for some of the asserted patents, has denied institution for one patent, and may still institute review in the other two proceedings. Micron, the party that initiated the PTAB proceedings and asked the Court to stay this case while they are decided, cannot now reverse its position to argue that these still-pending proceedings will not simplify the issues in this case.

### d) Factor 3: "Whether discovery is complete and whether a trial date has been set"

The Court also found that the status of the litigation weighs in favor of a stay, noting that it had not yet entered a scheduling order or set a trial date, and the parties had not conducted discovery aside from the issue of venue. (Dkt. 68 at 4.) This has not changed since the stay was instituted – aside from Micron's present Motion for Leave, the parties have made no substantive filings in this case and have not re-commenced discovery.

### e) Other factors

The Court did not explicitly consider other factors in its decision to stay the case. But no other circumstances relating to the present litigation have changed since the stay issued. Lifting the stay to entertain Micron's Motion for Leave is not just or appropriate at this time. *See, e.g., Murata*, 830 F.3d at 1361; *see also Baxter Healthcare Corp. v. Becton, Dickinson and Co.*, No. 3:17-cv-2186, 2021 WL 22553, at *4 (S.D. Cal. Jan. 4, 2021) (refusing to lift stay because "[t]he circumstances under which the Court granted the stay have not changed significantly"). The Court can, and should, deny the entirety of Micron's Motion on this basis.

## B. Micron Should Not Be Granted Leave to Amend

If the Court denies Micron's request to temporarily lift the stay (as it should), it need not consider Micron's substantive Motion for Leave to Amend. However, if the Court decides to reach the merits of the Motion for Leave, it should also deny that Motion.

### 1. Legal Standard

The generous standard that courts should freely give leave to amend when justice so requires, FED. R. CIV. P. 15(a)(2), is tempered by the necessary power of a district court to manage a case. *See Leal v. McHugh*, 731 F.3d 405, 417 (5th Cir. 2013). And leave to amend is not automatic. *Halbert v. City of Sherman*, 33 F.3d 526, 529 (5th Cir. 1994). Leave to amend can be denied when there is a valid justification such as futility of the amendment, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and bad faith or dilatory motive on the part of the movant. *See Jones v. Robinson Property Group, L.P.*, 427 F.3d 987, 994 (5th Cir. 2005).

### 2. Micron's Proposed Amendment Is Both Futile and an Improper Attempt to Cure its Failure to Plead Counterclaims in EDTX

#### a) Micron's Proposed Amendment Is Futile

Micron claims that its proposed amendment is not futile because its proposed counterclaims "state a plausible claim for relief." (Mot. at 15.) But Micron neglects to mention that it failed to plead these proposed counterclaims as compulsory counterclaims in the EDTX cases, which it was required to do. Since it has now waived its ability to bring those counterclaims, Micron's proposed amendment would be wholly futile here.

Although Micron's answering pleading in the first EDTX case[2] is styled "Defendants' Answer, Affirmative Defenses, and Counterclaims to Plaintiff's Complaint," Micron did not actually assert any counterclaims in that pleading. (*See* Exh. A.) Micron also did not bring any counterclaims in the second EDTX lawsuit.[3] (*See* Exh. B.) And Micron has never amended its pleadings in either lawsuit to include counterclaims. Simply put, Micron has not counterclaimed for declaratory judgment of non-infringement of the EDTX patents it seeks to introduce here in either EDTX lawsuit. This is fatal to Micron's Motion for Leave because declaratory judgment counterclaims of non-infringement are compulsory counterclaims to infringement claims and, if not pled, are deemed waived in all litigations.

A pleading must "state as a counterclaim any claim that—at the time of its service—the pleader has against an opposing party if the claim: (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction." FED. R. CIV. P. 13(a)(1). The Fifth Circuit has further clarified that a counterclaim meets the "transaction or occurrence" prong when, *inter alia*, there is any logical relationship between the claim and counterclaim. *See Park Club Inc. v. Resolution Trust Corp.*, 967 F.2d 1053, 1058 (5th Cir. 1992).

Courts agree that declaratory judgment counterclaims are compulsory counterclaims to infringement claims of the same patent(s) because they are logically related. *See, e.g., Hologram USA, Inc. v. Pulse Evolution Corp.*, No. 2:14-CV-0772, 2017 WL 444528, at *2 (D. Nev. Jan. 31, 2017) ("district courts routinely hold that a declaratory judgment claim for noninfringement

---

[2] *Netlist Inc. v. Micron Tech., Inc.*, Civil Action No. 2:22-cv-00203-JRG-RSP (E.D. Tex., filed June 10, 2022) (hereinafter, "first EDTX lawsuit").
[3] *Netlist Inc. v. Micron Tech., Inc.*, Civil Action No. 2:22-cv-00294-JRG-RSP (E.D. Tex., filed August 1, 2022) (hereinafter, "second EDTX lawsuit").

is a compulsory counterclaim to claims of infringement of the same patent"); *Leap Wireless Int'l, Inc. v. MetroPCS Comm'ns, Inc.*, No. 2:06-CV-240, 2007 WL 541428, at *4 (E.D. Tex. Feb. 15, 2007) (explaining that a logical relationship exists between declaratory judgment counterclaims and original patent infringement claims involving the exact same patents-in-suit); *see also* 6 C. Wright, A. Miller & M. Kane, Fed. Prac. & Proc. § 1410, at 73 (2d ed. 1990) ("Any counterclaim involving the same patent as involved in the original action usually is considered to arise from the same transaction as the main claim."). And the law is well-settled that a party's failure to file a compulsory counterclaim waives the claim in future litigation. *See The Coca-Cola Co. v. Pepsi-Cola Co.*, 500 F. Supp. 2d 1364, 1373-74 (N.D. Ga. 2007).

Since Micron failed to bring declaratory judgment counterclaims for non-infringement in the EDTX lawsuits, it has waived its ability to bring those claims in this proceeding. The Court may deny leave to amend on this point alone, since Micron's waiver renders the proposed amendment futile. *See Legate v. Livingston*, 822 F.3d 207, 211 (5th Cir. 2016) (affirming denial of leave to amend because "a district court need not grant a futile motion to amend"). Even if the Court does not find this factor to be dispositive, it weighs strongly against Micron.

### b)   Micron's Proposed Amendment Is Also an Improper Attempt to Cure its Failure to Allege Counterclaims in EDTX

Micron claims its proposed amendment is not sought to "fix any deficiencies in Micron's previous counterclaims" in this case, yet admits that the instant Motion is an attempt to correct deficiencies in the EDTX cases. (Mot. at 15 ("Micron seeks to add these counterclaims in response to Netlist's complaints filed in the Eastern District of Texas".) Micron failed to bring, and so waived, its compulsory counterclaims in the EDTX cases. Instead of moving to amend in EDTX to remedy that failure, Micron instead attempts to bring the EDTX patents into this stayed case. The Court may, and should, deny leave to amend where, as here, the amendment is sought

to cure prior deficiencies. *See, e.g.*, *Simmons v. Sabine River Authority Louisiana*, 732 F.3d 469, 478 (5th Cir. 2013). This factor also weights strongly against Micron.

### 3. Netlist Would Suffer Undue Prejudice if Amendment Is Allowed

#### a) The Technology Underlying the WDTX and EDTX Patents Is Different

All of Micron's "first-to-file" arguments depend on a finding that the WDTX and EDTX patents are so similar as to be considered essentially the same set of patents. But in determining whether to allow amendment to include new patents, courts must consider **all** the *Anza* factors, including the underlying science and technology (a factor Micron failed to address in its Motion for Leave). In a case involving five of the seven patents EDTX patents Micron seeks to add, the District of Delaware recently dismissed declaratory judgment counterclaims for those EDTX patents, finding insufficient overlap in accused products and the underlying science and technology compared to other memory-related patents at issue there. (*See* Exh. D.) That court reasoned

> [t]echnology such as memory modules can be described with varying levels of granularity. Some descriptions are so broad as to be meaningless. Others are so technical that every patent is distinguishable. In this case, I think that Samsung's characterization of the underlying technology as "computer memory modules" is too broad to support relation back. As Netlist argues, "under Samsung's theory its original complaint would sweep in every patent that Netlist ever obtains relating to the memory modules."

(*Id.* at 10); *see also Halo Elecs., Inc. v. Bel Fuse Inc.*, No. 07-cv-6222, 2008 WL 1991094, at *3 (N.D. Cal. May 5, 2008). This Court should make a similar finding here.[4]

---

[4] Like Samsung in Delaware, Micron here takes the broad approach by arguing that the patents are "directed toward the same underlying technology," and wrongly characterizing the WDTX/EDTX cases as sharing "related technology and accused products" and involving "the same DIMM technology." (Mot. at 11, 13).

### i.       The PMIC Patents ('918/'054) Are Directed to DDR5

The PMIC patents are directed to a new feature found only in DDR5 DIMMs: power management integrated circuits ("PMICs") that are located on the memory module. Bringing the PMIC function onto the module itself "marks a radical change in voltage regulation" from earlier generation DDR4 DIMMs, where power was managed by the motherboard. (*See* Exh. E at 3.) There is no substantial overlap with any of the patents at issue here.

***First***, the accused products in the WDTX actions are ***DDR4*** DIMMs. (*See* Dkt. 1.) In contrast, in the EDTX Action, Netlist has asserted the PMIC patents ***only*** against ***DDR5*** DIMMs. (*See* Exh. C at ¶¶ 39, 44.) As such, the PMIC patents require a substantially different evidentiary burden to prove infringement. (*Compare, e.g.*, Dkt. 1 (citing JEDEC DDR4 standards including JESD 82-32A; JESD79-4B; JESD 79-4C; JESD82-31A; JEDEC No. 21C) *with* Ex. C at ¶¶ 96-99 (citing JEDEC DDR5 standards including JESD 301; JESD 79-5; JESD 82-511).)

***Second***, the claims of the PMIC patents recite the use of multiple on-module "buck converters" which are each configured to produce a "regulated voltage" for use with components in the memory module. *See* '918 cl.1, '054 cl.1. By contrast, even the claims of the related '833 patent are directed at an entirely different invention requiring different clock frequencies depending on the mode of operation (*see* '833, cl. 1.), which would concern data and control signal exchange, not the on-module power management system claimed in the PMIC patents.

***Third***, because of the fundamental differences in technology and products, the PMIC patents (DDR5 DIMMs) and WDTX patents (DDR4 DIMMs) will also not overlap in their damages analyses.

### ii.      The Remaining EDTX/WDTX Patents Are Distinct

Additionally, Netlist has asserted the following sets of patents across the two actions, which implicate distinct advances in DDR4 memory module technology:

- EDTX: 10,949,<u>339</u>, 10,860,5<u>06</u>, 7,619,<u>912</u>, 9,858,<u>215</u>, 11,093,<u>417</u>.

- WDTX: 9,824,<u>035</u> and 10,268,<u>608</u>, 10,489,<u>314</u>.

***First***, the '339 patent at issue in EDTX is in a different family than any other asserted patent here. It is directed to a class of products called LRDIMM, which includes a set of data buffers between the DIMM interface[5] and the DRAM devices. Data buffers help reduce the electrical load experienced by a host system from the memory module and hence improve the signal integrity. The claims of the '339 patent concern timed enablement (and disablement) of write/read data paths through data buffers in accordance with latency parameters to drive data from one end of the data buffer to the other. The data path enablement/disablement includes the times enablement/disablement of tristate buffers on the data paths. No WDTX patent claims byte-wise buffers that include logic configured to control the timed enablement/disablement data path(s) through each of the data buffer circuits.

For example, the '314 patent at issue here relates separately to regulating the timing of data bursts and data strobe signals sent from a controller to the memory module "at a specified data rate" in response to a command from the host. *See, e.g.*, '314, cl. 1. The '035 and '608 patent claims recite the use of on-buffer logic or circuitry to control, not when data paths through the data buffers are to be enabled or disabled, but the timing of the data and data signals on the data paths in the data buffer. *See, e.g.*, '035, 19:29-45; '608, 19:36-55.

***Second***, the fact that the '506 is a continuation of the '608 and '035 patents does not require that they be litigated by the same court in the same proceeding. *See SIPCO, LLC v. Emerson Elec. Co*., No. 15-cv-907, 2016 WL 7743496, at *3 (E.D. Tex. Jul. 1, 2016) ("Merely

---

[5] A memory module, such as dual-inline memory module (DIMM), interfaces with a host system via the DIMM interface.

stating that the patents in the second-filed case are in the same patent family as the patents in the first-filed case is not sufficient to demonstrate substantial similarity under the first-to-file rule."). Moreover, the '506 patent specifically requires that the data buffer delay, by a predetermined amount, a "read strobe signal"[6] which is a signal that relates to timing. *See* '506, cl. 1. The '035 and '608 patents do not have such requirements. *See* '608, cl. 1; '035, cl. 1.

**Third**, the '912 patent at issue in EDTX implicates the operation of the registering clock driver ("RCD"), not the data buffers on a buffered memory module. An RCD is a controller on the memory module that receives control/address/clock signals from the host and outputs registered control/address/clock signals to DRAM devices. The '912 patent reads on rank multiplied DIMMs with features relating to the per-DRAM addressability feature introduced in DDR4.[7] It has nothing to do with the operation of distributed data buffers in LRDIMMs, at issue for the '035, '608, and '314 patents currently pending in this case.

**Fourth**, though related, the '215 and '417 patents (EDTX) and the '314 patent (WDTX) are also technically distinct. There are no terminal disclaimers filed among the patents, indicating that the examiner(s) did not consider the claims patentably indistinct. In contrast to the '314

---

[6] Strobe signals are sent to validate data or other signals on adjacent parallel lines.

[7] Rank multiplication refers to a situation where a memory module has *n* physical ranks of memory devices, but is presented to the host as a memory module with only *m* ranks (where *m* is less than *n*). This can potentially be simply the signaling from the host side while expanding the memory capacity on the memory module or allowing the memory modules to use less expensive memory devices with lower individual capacity.  For example, instead of using 2 ranks of eight 256MB DRAMs, the memory module can use 4 ranks of 128MB DRAMs.

patent, neither the '215 nor the '417 requires a first or second "burst of data strobes," much less respective bursts of data strobes that are transferred at a specified data rate.[8]

Going beyond the broad strokes of Micron's misleading arguments highlights the technical distinctions between the EDTX patents and WDTX patents and disproves the notion that all these patents are "materially similar" and "overlapping." (Mot. at 1, 4.) And, once Micron's argument regarding the alleged similarity of the EDTX and WDTX patents falls, Micron's first-to-file argument falls behind it.

### b)  Micron Misapplies the First-to-File Rule

Federal Circuit precedent disposes of Micron's first-to-file arguments. For example, in *In re ASM Int'l, N.V.*, ASM and HiKE counter-sued for patent infringement in the Northern District of California. 774 F. App'x 650 (Fed. Cir. 2019). Two months later, HiKE sued ASM in the District of Oregon, alleging that the same products infringed four different patents. *Id.* at 651. ASM moved to transfer the Oregon case to California under the first-to-file rule. The Oregon court denied the motion to transfer, noting that, although the same products were at issue in both cases, the fact that the Oregon case involved different asserted patents, claim terms, and claim elements for highly complex products meant that the first-to-file rule was inapplicable. *Id.* at 651. The Federal Circuit affirmed, expressly rejecting the argument that presence of the same products in both cases justified application of the first-to-file rule and made clear that a specific technical analysis must occur to evaluate overlap. *Id.* at 652.

---

[8] The '215 patent is directed to a memory module featuring on-buffer logic configured to respond to a first or second memory command by providing first or second "control signals to the buffer to enable communication of the first [or second] data burst" associated with each respective command. *See* '215, cl. 1. The '417 patent claims similarly recite on-buffer "circuitry … configurable to transfer" a burst of N-bit wide data signals between the N-bit wide memory bus the memory devices in the one of the plurality of N-bit wide ranks "in response to the data buffer control signals."  *See* '417, cl. 1.

Under *ASM*, this lawsuit is the second-filed case as to all the EDTX patents Micron seeks to add. ***First***, as in *ASM* and as shown above, there is no meaningful overlap between the asserted claims of the EDTX and WDTX patents. This weighs against applying the first-to-file rule as Micron proposes. *Id.; see also Netlist, Inc. v. SK Hynix Inc.*, No. 6:20-CV-00194-ADA, 2021 WL 2954095, at *3 (W.D. Tex. Feb. 2, 2021) (finding no "substantial overlap" where relevant actions involved distinct claims from different patents); *Pragmatus AV, LLC v. Yahoo! Inc.*, No. 11-902-LPS-CJB, 2013 WL 4629000, at *11 (D. Del. Aug. 28, 2013) ("[O]ur Court has declined to apply the first-filed rule where the patent-in-suit in the second-filed action was different than those in the earlier-filed action, but was a continuation of and shared a common specification with two of the patents in the earlier-filed action.").

***Second***, as also shown above, the EDTX and WDTX patents involve different underlying technologies. And, notably, Micron failed to analyze the claims involved in the different actions in its Motion—despite having the burden to do so. At most, Micron argues that claim 1 of the '506 patent includes the term "module control device," which is also found in the '035 and '608 patent claims. (Mot. at 13.) Micron's cursory listing of only some of the claim terms and elements at issue across the many distinct patents asserted in the WDTX and EDTX actions falls far short of establishing **substantial** overlap.

***Third***, the accused products are different. Much like the category "smartphone," "memory modules" encompass numerous different designs based on the generation of the module (i.e., DDR5, DDR4, etc.) and the design of the module (i.e., LRDIMM, RDIMM, UDIMM, SODIMM, etc.), which in turn affects not only the design of the memory devices themselves but also the types and designs of components on the modules. Saying all memory modules are the same is like saying all smartphones are the same—a nonsensical position.

For example, the '918 and '054 patents implicate DDR5 products, whereas the accused products in this action implicate DDR4 products. (*Compare* Exh. C at ¶¶ 38-40 *with* Netlist's Compl. (Dkt. 1) at ¶¶ 55-59.) They do not overlap at all. And even where overlap exists for products involving other patents, the accused products are highly complex and incorporate numerous, disparate technologies—not just components related to the patented technologies. Thus, as in *ASM*, the overlap in accused products does not implicate the first-to-file rule.

**Fourth**, that some of the EDTX patents are in the same family as some of the WDTX patents is insufficient to invoke the first-to-file rule. *See, e.g., Netlist, Inc. v. SK Hynix Inc*., No. 6:20-CV-00194-ADA, 2021 WL 2954095, at *3 (W.D. Tex. Feb. 2, 2021) ("[T]he first-to-file rule requires far more than patents from the same family, same parties, and same accused products."); *cf. Document Generation Corp.* v. *Allscripts, LLC*, No. 6:08-CV-479, 2009 WL 10677279, at * 4 (E.D. Tex. May 5, 2009) (rejecting motion to transfer continuation patents with different claims); *Datamize Inc. v. Fid. Brokerage Servs., LLC*, No. 2:03-cv-321-DF, 2004 WL 1683171, at *4 (E.D. Tex. Apr. 22, 2004) (related patents sharing the same specification are nonetheless different patents that merit independent construction).

### c) The Relation Back Doctrine Does Not Apply to Permissive Counterclaims

Even assuming that the first-to-file rule applies here, Micron must rely on the relation back doctrine to make this the first-filed case as to the **EDTX patents**. But Micron's proposed counterclaims are not logically related to the infringement claims asserted in **this case** for the reasons set forth above, and particularly because they involve completely different patents. Indeed, not a single patent overlaps between the EDTX and WDTX actions. Thus, since Micron's proposed counterclaims were compulsory as to the EDTX cases (and thus waived when omitted from its answers), the relation back doctrine does not apply. *See, e.g.*, *Roxane Lab., Inc.*

*v. Abbott Lab.*, No. 2:12-cv-312, 2012 WL 12872690, at *2 (S.D. Ohio Aug. 21, 2012) ("This Court, however, has stated that challenges to different patents are not compulsory counterclaims in litigation involving related patents."); *BMC Resources, Inc. v. Paymentech, L.P.*, No. 3-03-CV-1927-M, 2004 WL 981079, at *5 (N.D. Tex. May 5, 2004) (rejecting argument that counterclaims involving the '786 patent are compulsory in the infringement action involving the '456 patent); *BrideLux, Inc. v. Cree, Inc.*, No. 9:06-CV-240, 2007 WL 9724143, at *2 (E.D. Tex. Feb. 5, 2007) ("Cree's counterclaim involves different patents and different technologies. Therefore, the compulsory counterclaim rule is inapplicable."); *Sea-Land Service, Inc. v. R.V. D'Alfonso Co.*, 727 F.2d 1, 5 n.2 (1st Cir. 1984) ("[U]nlike a compulsory counterclaim the filing of a permissive counterclaim is not deemed to related back."). Accordingly, even if the first-to-file rule applies here, this action would still be the second-filed action as to the EDTX patents.

### d)   The First-to-File Rule Cannot Apply Because Co-Pending Actions Against Samsung in EDTX Also Involve the EDTX Patents

Even if Court finds substantial overlap between this and the EDTX proceedings, the first-to-file rule still does not apply in the way Micron alleges. Long before Netlist filed the EDTX actions against Micron, Netlist sued Samsung in EDTX on the same patents. The first case ("Samsung I")[9] asserted the '506, '339, '918, '054, '060, and '160 patents and the second case ("Samsung II")[10] asserted the '912, '417, and '215 patents.

Netlist's infringement claims against Samsung and Micron are based on similar theories and the same claims, cover the same types of accused products, and reference substantially the same JEDEC Standards (including different versions). (*See* Exhs. H, I, J, and C.) Micron's answer to Netlist's complaint in their EDTX cases raises the exact same invalidity and

---

[9] *Netlist, Inc. Samsung Elec. Co., Ltd. et al*, No. 21-cv- 463-JRG (E.D. Tex. Dec. 20, 2021)
[10] *Netlist, Inc. v. Samsung Elec. Co., Ltd., et. al.*, No. 22-cv-293-JRG (E.D. Tex. Aug. 1, 2022)

enforcement arguments as Samsung—in fact, Micron's and Samsung's inequitable conduct claims are based on almost *identical* language. (*Compare* Exh. F at ¶¶ 44-51 (Thirteenth Additional Defense) *with* Exh. A at ¶¶ 28-35 (Fifteenth Affirmative Defense).)

Samsung I is moving quickly: the parties' claim construction briefing completes on September 23, the *Markman* hearing is set for November 4, fact discovery closes on December 12, expert discovery closes on January 17, 2023, and trial is scheduled to start on May 1, 2023. (*See* Exh. G.) Thus, the Eastern District of Texas will soon be very familiar with the relevant technologies, prior art, claim language, accused products, and JEDEC standards for the '506, '339, '918, '054, '060, and '160 patents. Under these circumstances, having the EDTX court adjudicate both the Samsung and Micron actions involving the identical patents will serve the best interests of judicial efficiency and fairness. *See Mobility Elecs., Inc. v. Am. Power Conversion Corp.*, No. 07-cv-83, 2007 WL 9724768, at *4 (E.D. Tex. Oct. 10, 2007) (a court's "involvement in two related proceedings favors denying [the transfer] motion" under the first-to-file rule because "federal courts will recognize the wisdom of allowing a judge who has familiarity with the subject matter at issue to preside over subsequent litigation."); *Network-1 Sec. Solutions, Inc. v. D-Link Corp.*, 433 F.Supp.2d 795, 802 (E.D. Tex. 2006) (recognizing advantages of having a judge "who had already construed the patent claims and examined its voluminous file history" preside over case and therefore allowing the second-filed suit to proceed; *DataTreasury Corp. v. First Data Corp.*, 243 F.Supp.2d 591, 595-97 (N.D. Tex. 2003) (finding EDTX is a better forum because related patent infringement cases were already pending and assigned to the same judge).

### e) Micron's Proposed Amendment Would Unduly Prejudice Netlist

As explained above, Micron's motive for seeking this amendment is to move patents that are currently involved in active EDTX litigation to this case. These patents would be subject to

the stay in this case immediately after resolution of Micron's Motion for Leave. This is Micron's plan even though IPRs have not been filed against all the EDTX patents, nor instituted against any of them. This result would be extremely prejudicial to Netlist, as it would mean delayed resolution of its infringement allegations, even though there is no basis for all the patents to be subjected to a stay.

In addition, Micron has attempted to invoke the first-to-file rule by maintaining the same claims in two venues. Assuming it prevails on its pending motion to sever and stay the EDTX patents in that court, Micron has not indicated whether it intends to leave the EDTX patents pending in both districts. If it does, that result would unduly prejudice Netlist's ability to achieve consistent results and finality as to its infringement assertions, and presents a compelling reason for the Court to deny leave to amend. *See, e.g., Hydro-Quebec v. Valence Tech., Inc.*, No. A-06-CA-111-SS (W.D. Tex. Nov. 11, 2011, Dkt. 275) ("Finally, the HQ/UT has already chosen to bring claims based [on] the Continuation Patents in the separate Northern District suit, and allowing Valence to bring its counterclaims to the Continuation Patents here, rather than in that suit, risks undue prejudice in the form of fragmented and contradictory rulings and claim constructions.").[11]

### 4. Micron Seeks Leave to Amend in Bad Faith

While the Fifth Circuit has not propounded a specific definition of "bad faith" in the context of motions for leave to amend, other district courts define "bad faith" in this context as "acting with intent to deceive, harass, mislead, delay, or disrupt." *Wizards of the Coast LLC v. Cryptozoic Entm't LLC*, 309 F.R.D. 645, 651 (W.D. Wash. 2015); *see also Graybar Elec. Co. v. Weyerhaeuser Co.*, No. 4:18-cv-4128, 2019 WL 12073982, at *6 (W.D. Ark. Jul. 11, 2019). As

---

[11] This opinion is attached as Exhibit K.

explained above, Micron's motive in seeking amendment is pure gamesmanship, particularly because this case has been stayed pursuant to Micron's own request. Micron now seeks to add patents claiming distinct technologies from two active litigations to a stayed case to delay resolution on Netlist's infringement allegations for as long as possible. Such intentional delay falls squarely within the definition of bad faith.

Incredibly, **Micron** accuses **Netlist** of forum shopping, omitting the fact that it was Micron that demanded the stay in this case, and is now attempting to temporarily lift the stay to nearly triple the number of patents in this case, then have the stay resume. Courts may deny leave to amend where the amendment requested is to achieve a tactical advantage or otherwise in bad faith. *See Auster Oil & Gas, Inc. v. Stream*, 764 F.2d 381, 391 (5th Cir. 1985). The Court should see through Micron's transparent attempts to gain a strategic advantage in this case and find that Micron's amendment is sought in bad faith. *See, e.g., G&C Land v. Farmland Mgmt. Servs.*, 587 Fed. Appx. 99, 103 (5th Cir. 2014) (affirming district court's denial of motion for leave to amend in part because amendment was sought for an improper purpose).

## III.    CONCLUSION

The Court should reject Micron's attempt to gain an unfair tactical advantage in this case (and acknowledge Micron's failure to analyze the factors that govern the threshold question of whether to lift the stay) by refusing to temporarily lift the stay to consider Micron's Motion for Leave. If the Court does reach the merits of Micron's Motion for Leave, that Motion should be denied because the proposed amendment would be futile, unduly prejudicial to Netlist, and is sought in bad faith.

Dated: September 16, 2022

*/s/ Jaime K. Olin*
Paul J. Skiermont (TX Bar No. 24033073)
Steven W. Hartsell (TX Bar No. 24040199)
Jaime K. Olin (TX Bar No. 24070363)
Ryan A. Hargrave (TX Bar No. 24071516)
Michael D. Ricketts (TX Bar No. 24079208)
SKIERMONT DERBY LLP
1601 Elm St., Ste. 4400
Dallas, TX 75201
Phone: (214) 978-6600
Fax: (214) 978-6601
pskiermont@skiermontderby.com
shartsell@skiermontderby.com
jolin@skiermontderby.com
rhargrave@skiermontderby.com
mricketts@skiermontderby.com

Rex Hwang (CA Bar No. 221079)
SKIERMONT DERBY LLP
800 Wilshire Blvd., Ste. 1450
Los Angeles, CA 90017
Phone: (213) 788-4500
Fax: (213) 788-4545
rhwang@skiermontderby.com

J. Stephen Ravel (TX Bar No. 16584975)
Kelly Ransom (TX Bar No. 24109427)
KELLY HART & HALLMAN LLP
303 Colorado, Suite 2000
Austin, Texas 78701
Tel: (512) 495-6429
steve.ravel@kellyhart.com
kelly.ransom@kellyhart.com

*Attorneys for Plaintiff*
Netlist, Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a) on this the 16th day of September, 2022.

*/s/ Jaime K. Olin*