IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| NETLIST, INC., | § | |
| | § | |
| Plaintiff/Counter-Defendant, | § | |
| | § | |
| v. | § | 1:22-CV-136-DII |
| | § | |
| MICRON TECHNOLOGY, INC., et al., | § | |
| | § | |
| Defendants/Counter-Plaintiffs. | § | |

## ORDER

Before the Court is Plaintiff Netlist, Inc.'s ("Netlist") opposed motion to lift the stay and transfer venue. (Dkt. 92). Defendants Micron Technology Inc., Micron Semiconductor Products, Inc., and Micron Technology Texas LLC (collectively, "Micron") filed a response in opposition, (Dkt. 93), and Netlist filed a reply, (Dkt. 94). Having considered the parties' arguments, the record, and the relevant law, the Court will deny the motion to lift the stay.

## I. BACKGROUND

Netlist filed its complaint on April 28, 2021 in the Waco Division of the Western District of Texas, alleging that Micron infringed three of its patents: U.S. Patent Nos. 10,489,314 (the "'314 Patent"); 9,824,035 (the "'305 Patent"); and 10,268,608 (the "'608 Patent") (collectively, "the Asserted Patents"). (Compl., Dkt. 1) (*Netlist I*). On the same day, Netlist also filed a second action against Micron, alleging that Micron infringed U.S. Patent No. 8,301,833 (the "'333 Patent"). *See Netlist, Inc. v. Micron Technology, Inc. et al.*, Case No. 1:22-cv-00134-DII (W.D. Tex. filed Apr. 28, 2021) ("*Netlist II*").[1]

---

[1] *Netlist II* has a similar procedural history to the present case. However, a motion to lift the stay and transfer venue was not filed in *Netlist II*.

Early in the course of litigation, in November 2021, Micron filed an opposed motion to transfer this case to the District of Idaho, arguing that the transfer factors favored moving the case to Idaho. (*See* Mot. Transfer, Dkt. 32). Netlist never filed a response to Micron's motion to transfer; instead, the parties proceeded with venue discovery, (*see* Dkt. 33), and afterward jointly agreed to transfer the case from the Waco Division to the Austin Division of the Western District of Texas, (*see* Stipulation, Dkt. 43). In the joint stipulation, both parties agreed that transfer to Austin would be "for the convenience of the parties and witnesses and in the interest of justice, pursuant to 28 U.S.C. § 1404(b)." (*Id.* at 1–2). On February 14, 2022, the case was transferred to the Austin Division. (Order, Dkt. 45).

Pursuant to the scheduling orders issued before and after the transfer, (*see* Dkts. 30, 54), Micron filed its opening claim construction brief on February 3, 2022, (Dkt. 41); Netlist filed its responsive claim construction brief on March 10, 2022, (Dkt. 55); and Micron filed a reply claim construction brief on March 24, 2024, (Dkt. 57). A *Markman* hearing was scheduled for May 12, 2022. (*See* Dkt. 54).

Meanwhile, on December 23, 2021, Micron submitted two petitions for *inter partes* review ("IPR") challenging the validity of all asserted claims in the '035 and '608 Patents—two of the three patents asserted in this case, *Netlist I*. (*See* Mot. Stay, Dkt. 59, at 2). On January 14, 2022, Micron submitted a third petition for IPR challenging the validity of all asserted claims in the '833 Patent— the sole patent at issue in *Netlist II*. (*Id.*). On March 30, 2022, Micron submitted two more petitions for IPR, this time challenging the validity of all asserted claims in the '314 Patent, the other patent asserted in this case. (*Id.*). Accordingly, by March 2022, all claims challenged in this case and *Netlist II* were the subject of pending IPR petitions.

Shortly thereafter, Micron filed an opposed motion to stay both cases pending resolution of these proceedings before the Patent Trial and Appeal Board ("PTAB") and any appeals. (Mot. Stay,

Dkt. 59, at 1). On May 11, 2022, this Court granted Micron's motion to stay, finding that the factors that courts consider when deciding whether to stay a case in light of IPR proceedings weighed in favor of granting a stay. (Order, Dkt. 69). Specifically, the Court found that a stay would not unduly prejudice Netlist because it had delayed in serving Micron with its complaints and because, although Netlist has alleged that competes with Micron, Netlist has not requested injunctive relief from the Court. (*Id.* at 2–3). Second, the Court found that a stay would simplify the issues in this case because Micron's IPR petitions covered all asserted claims in each Asserted Patent in the two cases and thus, the PTAB's decisions would "significantly streamline the issues" before the Court. (*Id.* at 3). Last, the Court found that the status of the litigation weighed in favor of a stay because the Court had not yet rendered a scheduling order or set a trial date, and the parties had yet to conduct fact discovery in the case. (*Id.* at 4). The Court thus ordered this action and *Netlist II* stayed pending further order of the Court. (*Id.*).

Since May 2022, the IPR proceedings of the four Asserted Patents in this case and *Netlist II* have progressed to different stages. First, as to the '035 Patent, the PTAB granted Micron's petition for review. The PTAB issued a final written decision on June 20, 2023, and a rehearing decision on August 16, 2023. (Joint Status Report, Dkt. 88, at 7). The PTAB affirmed the validity of claims 2 and 6 and found that claims 1, 10–13, 21, and 22 were invalid. (*Id.*). Second, as to the '608 Patent, the PTAB denied Micron's petition for IPR on July 19, 2022. However, on April 27, 2023, the PTAB granted a petition for IPR filed by third party Samsung Electronics Company ("Samsung"). (*Id.* at 8). On January 10, 2024, Miron filed a second petition for IPR on the '608 Patent that was similar to Samsung's petition and also filed a separate motion to join Samsung's petition. (*Id.*). Both Micron's second petition for IPR and its motion for joinder remain pending, with an institution decision expected by July 25, 2024. (*See* Resp., Dkt. 93, at 5). Third, as to the '314 Patent, the PTAB granted Micron's two petitions for review. On October 30, 2023, the PTAB issued two final written

3

decisions, determining that no challenged claims were unpatentable. (Joint Status Report, Dkt. 88, at 8). The PTAB's decisions on the '314 Patent are now on appeal before the Federal Circuit. (*Id.*). Last, as to the '833 Patent, the PTAB granted Micron's petition for review. On August 28, 2023, the PTAB issued its final written decision finding that claims 1, 3–17, and 19–30 were invalid. (*Id.* at 9). Micron asserts that the time for Netlist to appeal the PTAB's findings on '833 Patent has now passed and that the USPTO has cancelled these claims. (Resp., Dkt. 93, at 5).[2] In summary, as of today, IPR proceedings have concluded as to the '035 and '833 Patents, IPR proceedings on the '608 Patent are ongoing, and IPR decisions as to the '314 Patent are on appeal.

Since this case was filed in the Western District of Texas, Netlist has also filed five actions concerning its patents in the Eastern District of Texas ("EDTX"). Two of these cases are between Samsung and Netlist—*Samsung I* and *Samsung II*,[3] and the other three cases are between Netlist and Micron—*Netlist III, Netlist IV,* and *Netlist V*.[4] These five cases are all assigned to United States District Judge Rodney Gilstrap. One of the Asserted Patents in this case—the '608 Patent—has been asserted in *Samsung I*. Otherwise, the five EDTX cases involve different patents, though Netlist contends that the Asserted Patents before this Court and those before EDTX are similar in nature. (*See* Mot., Dkt. 92, at 4–5).

The five EDTX cases are at various stages of litigation. In *Samsung I*, final judgment has been entered following a jury and bench trial. *Samsung II* is scheduled for a jury trial beginning in mid-August 2024, after two years of motion and discovery practice. In *Netlist III*, the court recently stayed the case pending resolution of IPRs on the two remaining patents asserted in the case, noting

---

[2] Because all the asserted claims of the '833 Patent have been found invalid, Micron has requested that Netlist move to dismiss *Netlist II*. (Resp., Dkt. 93, at 5 n.1). Netlist has not yet responded to this request. (*Id.*).
[3] *See Samsung v. Netlist*, No. 2:21-cv-463 (E.D. Tex. judgment entered Aug. 11, 2023) (*Samsung I*); *Netlist v. Samsung*, No. 2:22-cv-293 (E.D. Tex. filed Aug. 1, 2022) (*Samsung II*).
[4] *See Netlist v. Micron*, No. 2:22-cv-203 (E.D. Tex. stayed Feb. 10, 2024) (*Netlist III*); *Netlist v. Micron*, No. 2:22-cv-294 (E.D. Tex. jury verdict entered May 23, 2024) (*Netlist IV*); *Netlist v. Micron*, No. 2:23-cv-628 (E.D. Tex. filed Dec. 22, 2023) (*Netlist V*).

that the other four asserted patents had already been invalidated by the PTAB. In *Netlist IV*, a jury trial recently concluded on May 23, 2024, in which the jury found Micron liable for infringement of the two patents asserted in that case. *Netlist V* is different in kind from the other suits because it is a declaratory action; Netlist requests a declaratory judgment that its previous EDTX patent infringement suits were not brought in bad faith or in violation of an Idaho statute. *Netlist V* is in the early stages of litigation and has recently been referred to mediation. As of now, five of the six patents asserted by Netlist against Micron in the EDTX cases have been invalidated through IPR proceedings and a final IPR decision on the sole remaining patent is due by August 2024. (*See* Resp., Dkt. 93, at 6).

On April 19, 2024, Netlist filed the present motion to lift the stay in this case for the sole purpose of transferring this case to EDTX. (Mot., Dkt. 92, at 1). Netlist argues that that EDTX is the "center of gravity" for the various disputes between Netlist and Micron because it is the "one venue that has developed the deepest understanding of the claimed technologies at issue." (*Id.*). Netlist argues that transfer to EDTX would promote the efficient resolution of this case, which has otherwise been "unjust[ly]" delayed. (*Id.*). Micron opposes Netlist's motion, arguing that the circumstances have not changed such that the Court should lift the stay imposed in this case given the pending IPR of the '608 Patent and the pending appeal of the IPR of the '314 patent. (Resp., Dkt. 93, at 1). Micron also argues that transferring the case to EDTX would violate the parties' stipulated agreement to try this case in Austin. (*Id.* at 2).

## II. LEGAL STANDARD

"The decision of whether to extend a stay falls solely within the court's inherent power to control its docket." *Pers. Audio LLC v. Micron, Inc.*, 230 F. Supp. 3d 623, 626 (E.D. Tex. 2017). "A court may lift a stay if the circumstances supporting the stay have changed such that the stay is no longer appropriate." *Murata Mach. USA v. Daifuku Co.*, 830 F.3d 1357, 1361 (Fed. Cir. 2016). A court

considers the same three factors that were considered at the time that the stay was imposed: (1) whether a stay will simplify the issues raised; (2) whether a stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving party; and (3) the status of the litigation at the time the stay is requested. *Pers. Audio*, 230 F. Supp. 3d at 626; *see also Crossroads Sys. v. DOT Hill Sys. Corp.*, No. A-13-CA-1025, 2015 WL 3773014, at *2 (W.D. Tex. Jun. 16, 2015).

### III. DISCUSSION

At the outset, the parties disagree about the proper order for deciding the two requests in Netlist's motion—the request to lift the stay and the request to transfer. Netlist structures its motion by first arguing why transfer is warranted under 28 U.S.C. § 1404(a) and the eight private and public interest transfer factors.[5] (*See* Mot., Dkt. 92, at 5–15). Netlist's transfer argument largely rests on the fourth private interest factor—consideration of "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 315. Netlist argues that this factor favors transfer because of the five Netlist patent cases that have been, or are being, litigated in EDTX. (*See* Mot., Dkt. 92, at 8–12). Netlist argues that transfer to EDTX would "indisputably promote the efficient resolution of the parties' dispute" because of EDTX's familiarity with the parties and technology in this case. (*Id.* at 11). Netlist also points out that this Court has a "heavy docket" and that "it will likely take substantial time for the Court to learn the issues and underlying technology and legal issues that the [EDTX] judges are already intimately familiar with." (*Id.*) Netlist

---

[5] To evaluate transfer under § 1404(a), courts first consider "whether a civil action 'might have been brought' in the destination venue." *See In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) ("*Volkswagen II*"). (citation omitted). Courts then consider eight private and public interest factors. The "private interest" factors include "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* at 315 (citation omitted). The "public interest" factors include, "[5] the administrative difficulties flowing from court congestion; [6] the local interest in having localized interest decided at home; [7] the familiarity of the forum with the law that will govern the case; and [8] the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id.* (citation omitted).

only briefly discusses the other seven transfer factors but argues that they, too, support transfer. (*See id.* at 12–15).

After discussing the motion to transfer, Netlist then discusses why the Court should lift the stay "for the limited purpose of transferring" the case. (*Id.* at 15–16). Netlist briefly considers the three factors courts consider when deciding whether to lift a stay. Specifically, Netlist argues that "transfer to [EDTX] would greatly simplify this case," as explained in its transfer analysis. (*Id.* at 16). Second, Netlist argues that it will suffer prejudicial delay if the case remains in this district "where trial is likely years away," because the parties are direct competitors, the '314 Patent expires in 2025, and delay "dramatically limits Netlist's ability to seek injunctive relief." (*Id.* at 12, 16). In contrast, Netlist contends that Micron will suffer no prejudice if the case were transferred to EDTX. (*Id.*). Third, Netlist argues that transfer would streamline completion of discovery and claim construction, since EDTX has engaged in both matters in the related cases. (*Id.*). Last, Netlist briefly argues that some of its claims should not remain stayed despite the pending IPR petition and appeal. Instead, Netlist argues that "the question of whether any limited stay should remain in effect should be adjudicated by Chief Judge Gilstrap in the Eastern District." (*Id.* at 16).

In opposition, Micron argues that Netlist's motion is improper because the Court has not yet lifted the stay in this case or permitted Netlist leave to file a transfer motion. (Resp., Dkt. 93, at 3). Accordingly, Micron structures its response by first analyzing whether it is proper to lift the stay in this case before arguing whether transfer is warranted. Micron argues that the Court should not lift the stay because the circumstances that existed when the stay was initiated have not changed: the IPR proceedings for the '608 Patent and an appeal regarding the '314 IPR are ongoing. (*Id.* at 6). Netlist argues that there is a high likelihood that the IPR and the appeal—which involves claim construction issues—will simplify the issues in this case. (*Id.* at 10–12). Next, Micron argues that maintaining the stay would not unduly prejudice Netlist because Netlist has not requested injunctive

relief in this case and because Netlist delayed in filing suit to enforce its patent rights. (*Id.* at 8–10). Last, Micron argues that the status of litigation favors maintaining the stay because when the stay was granted, the Court had not yet rendered a scheduling order or set a trial date in this case, nor had the parties begun fact discovery. (*Id.* at 12).

Micron also argues that transfer to EDTX is not warranted because such a transfer would violate the parties' stipulated agreement to try the case in Austin. (*Id.* at 2). Micron alleges that Netlist's request is "nothing more than impermissible forum-shopping" designed to "circumvent the Stay in this case." (*Id.* at 2, 12). Micron requests that if the Court considers Netlist's motion to transfer on the merits that the Court should then also consider Micron's prior request to transfer the case to Idaho. (*Id.* at 13).

The Court agrees with Micron. The Court finds it proper to first address whether it should lift the stay as a threshold inquiry before considering whether transfer is warranted. Because the Court finds that the factors continue to weigh in favor of a stay, the Court does not engage in an in-depth transfer analysis.

First, maintaining the stay is likely to simplify the issues in this case. The PTAB has instituted IPR for all asserted claims of the '608 Patent. As this Court said when it granted the stay in this case, "the PTAB's decision[] may significantly streamline the issues before the court." (Order, Dkt. 69, at 3); *see also NFC Tech. LLC v. HTC Am., Inc.*, No. 2:13-CV-1058-WCB, 2015 WL 1069111, at *4 (E.D. Tex., Mar. 11, 2015) (noting that "the prospect that the *inter partes review* proceeding will result in simplification of the issues" is "the most important factor bearing on whether to grant a stay"). The fact that the PTAB previously denied Micron's original challenge of the '608 Patent "holds no water, as the PTAB's prior decisions are irrelevant in light of the fact that the PTAB has recently decided to institute an IPR of" the '608 Patent. *See Polaris Powerled Techs., LLC v. Dell Techs. Inc.*, No. 1:22-CV-973-RP, 2024 WL 1546973, at *3 (W.D. Tex. Mar. 5, 2024). Likewise, the '314

Patent is on appeal at the Federal Circuit. Because the appeal could also simplify issues in this case—particularly regarding claim construction—the appeal also weighs in favor of maintaining the stay. *See Nobots LLC v. Google LLC*, No. 1:22-CV-585-RP, 2024 WL 925553, at *3 (W.D. Tex. Mar. 4, 2024) ("[I]f the Court were to lift the stay prior to the Federal Circuit's decision, this Court would have to engage in the claim construction issue, potentially duplicating the Federal Circuit's work. Such a situation would be an inefficient use of both this Court's and the parties' resources") (citing *MemoryWeb, LLC v. Apple, Inc.*, No. 21-cv-09839-VC, 2023 WL 8006852, at *1 (N.D. Cal. Nov. 16, 2023)).

Second, the potential for the pending IPR and the Federal Circuit decision to simplify the issues in this case outweighs the minimal harms of maintaining the stay. Netlist argues that it will be unduly prejudiced by a continued stay because it is a direct competitor with Micron. However, as this Court noted in its initial stay order, Netlist has not requested injunctive relief from the Court in this case. (*See* Order, Dkt. 69, at 3). While competition between the parties can weigh in favor of finding undue prejudice, a party's failure to request injunctive relief can indicate that the party is not unduly prejudiced by a stay of its case. *See VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1318–19 (Fed. Cir. 2014); *see also Uniloc 2017 LLC v. LG Elecs. U.S.A.*, No. 3:18-CV-3071-N, 2020 WL 374545, at *1 (N.D. Tex. Jan. 23, 2020) ("[F]ailure to file for preliminary injunction suggests that monetary damages could adequately compensate [Plaintiff].")). To the contrary, a stay "will not diminish the monetary damages to which [Netlist] will be entitled if it succeeds in its infringement suit." *See id.* at 1318. Further, Netlist's decision to wait two to four years to file suit on the Asserted Patents weighs against its claim that it will be unduly prejudiced by maintaining the stay. *See id.* at 1318–19 (noting the fact that a patentee waited nearly a year after the asserted patent was issued to file suit weighed against a finding of undue prejudice).

Third, this case has remained at an early stage of litigation, as the Court noted when it first instituted the stay: no fact discovery has begun, nor has the Court issued a scheduling order or set a trial date in this case. Further, as noted above, if the Court were to lift the stay and allow the case to proceed to a *Markman* hearing, then it would likely duplicate the work that the Federal Circuit would do in the appeal on the '314 Patent. Continuing to stay the case while it is at an early stage will best conserve the parties' and the Court's resources. Thus, this factor also weighs against lifting the stay. *See Baxter Healthcare Corp. v. Becton, Dickinson & Co.*, No. 3:17-CV-2186 JLS-RBB, 2021 WL 22553, at *2–3 (S.D. Cal. Jan. 4, 2021); *see also Bell Semiconductor, LLC v. NXP Semiconductors, N.V.*, No. 1:20-CV-611-LY, 2022 WL 1447948, at *2 (W.D. Tex. Feb. 7, 2022); *Landmark Tech., LLC v. iRobot Corp.*, No. 6:13-cv-411-JDL, 2014 WL 486836, at *3 (E.D. Tex. Jan. 24, 2014) ("Staying a case at an early juncture can advance judicial efficiency and maximize the likelihood that neither the court nor the parties expend their assets addressing invalid claims.") (internal quotation marks and citation omitted).

Last, setting aside the issue of whether the stay should be lifted in the case, the Court nonetheless finds that transferring this case to EDTX would not be in the interests of justice. Netlist had its choice of venue when it initiated this case, and it chose to file in the Waco Division of this District. Once it was faced with Micron's motion to transfer to Idaho, it then had a second chance to choose the venue for this dispute and agreed to transfer the case to the Austin Division. Given that the case was transferred to this Division by mutual assent of the parties, the Court finds that there is no present indication that it should not remain in this Division. Because this case is currently stayed and appears to have no connection to EDTX aside from the related cases there, the Court is not persuaded that transfer to EDTX would be warranted even if the case were not stayed.

Netlist's motion to transfer is particularly troubling because it appears that it is requesting transfer now that it has not experienced success in this Court. Netlist's brief suggests that the true

motive behind its motion is to obtain transfer to a more favorable venue that will be more amenable to lifting the stay in its case. The Court finds that it would be unjust to allow Netlist to have a third bite at the apple for such a purpose. *See Xiaohua Huang v. Huawei Techs. Co.*, No. 2:16-CV00947-JRG-RSP, 2019 WL 5901033, at *1 (E.D. Tex. Jan. 11, 2019); *see also Drake v. Niello Co.*, No. 2:17-cv-1036-JAM-EFB PS, 2018 WL 1256762 (E.D. Cal. Mar. 12, 2018), *report and recommendation adopted*, 2018 WL 3031588 (E.D. Cal. Apr. 12, 2018), *aff'd*, 776 F. App'x 451 (9th Cir. 2019) ("[T]here is no basis for transferring this action a second time . . . . Plaintiff has now apparently changed his mind about litigating in this district, but [Plaintiff's] new request smacks of forum shopping. Allowing plaintiff to now pursue this action in a new venue would be tantamount to endorsing that effort. Accordingly, plaintiff's motion to transfer venue is denied."). Accordingly, the Court denies Netlist's request to lift the stay in this case, even for the limited purpose of transfer.

## IV. CONCLUSION

For these reasons, **IT IS ORDERED** that Netlist's opposed motion lift the stay and transfer venue, (Dkt. 92), is **DENIED**. This action remains **STAYED** pending further order of the Court.

**IT IS FURTHER ORDERED** that the parties shall continue to file quarterly status reports apprising the Court of the status of the IPR and appeal, with the next status report due on or before **September 17, 2024**.

**SIGNED** on June 17, 2024.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE